# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**MICHAEL ALBERT,** *on behalf of*
*himself and others similarly situated*,
          **Plaintiff,**            **Case No. 2:22-cv-694**
                                    **JUDGE EDMUND A. SARGUS, JR.**
          **v.**                  **Magistrate Judge Kimberly A. Jolson**

**HONDA DEVELOPMENT &**
**MANUFACTURING OF AMERICA, LLC,**
          **Defendant.**

**TREVOR TRIPOLI,** *on behalf of*
*himself and others similarly situated*,
          **Plaintiff,**             **Case No. 2:22-cv-3828**
                                    **JUDGE EDMUND A. SARGUS, JR.**
          **v.**                  **Magistrate Judge Kimberly A. Jolson**

**HONDA DEVELOPMENT &**
**MANUFACTURING OF AMERICA, LLC,**
          **Defendant.**

**BRANDON WHATLEY,** *on behalf of*
*himself and others similarly situated*,
          **Plaintiff,**             **Case No. 2:22-cv-4372**
                                    **JUDGE EDMUND A. SARGUS, JR.**
          **v.**                  **Magistrate Judge Kimberly A. Jolson**

**HONDA DEVELOPMENT &**
**MANUFACTURING OF AMERICA, LLC,**
          **Defendant.**

**MELISSA SCARBROUGH,** *on behalf of*
*herself and others similarly situated*,
          **Plaintiff,**             **Case No. 2:22-cv-4277**
                                    **JUDGE EDMUND A. SARGUS, JR.**
          **v.**                  **Magistrate Judge Kimberly A. Jolson**

**HONDA DEVELOPMENT &**
**MANUFACTURING OF AMERICA, LLC,**
          **Defendant.**

## OPINION AND ORDER

This matter is before this Court on a Motion for Summary Judgment filed by Defendant Honda Development & Manufacturing of America, LLC ("Honda") in this Fair Labor Standards Act ("FLSA") and putative class action. (ECF No. 37.) In response, Plaintiff Michael Albert filed a Federal Rule of Civil Procedure 56(d) motion. (ECF No. 39.) The parties jointly moved to extend the time for Plaintiff Albert to respond to conduct discovery, and the Court granted the joint motion. (ECF Nos. 43, 44.) This case was then stayed pending the final disposition of *Brooke Clark, et al. v. A&L Home Care and Training Center, LLC, et al.*, Sixth Circuit Case Nos. 22-3101, 22-3102 (ECF No. 58), and because of the stay, Honda's Motion for Summary Judgment was withdrawn as moot (ECF No. 61). The Court instructed that it would reactivate the Motion upon request once the stay was lifted. (*Id.*)

A year and a half later, once the Motion was reactivated upon Honda's request, Plaintiff Albert responded in opposition to the Motion. (ECF No. 96.) Honda replied (ECF No. 97). For the reasons stated below, Honda's Motion is **GRANTED in part, DENIED in part, and HELD IN ABEYANCE in part**.

### I.    FACTUAL BACKGROUND

Plaintiff Albert's complaint arises from a ransomware attack on Honda's Kronos timekeeping system that rendered the system inoperable. (Am. Compl., ECF No. 13; Alloway Decl., ECF No. 32-1, ¶¶ 3, 21.) The outage lasted from December 11, 2021 to about mid-February 2022. (*Id.*; Bailey Decl., ECF No. 37-1, ¶¶ 4–7.)

Plaintiff Albert brought this action against Honda in February 2022. (Compl., ECF No. 1.) He filed an Amended Complaint in April 2022, bringing a claim under the FLSA and alleging that Honda failed to pay overtime to him and other similarly situated employees. (Am. Compl. ¶¶ 61–67.) Plaintiff Albert also brings claims for Ohio wage and hour violations under

Ohio Revised Code § 4111.03 (Ohio's overtime compensation statute) and § 4113.15 (Ohio's Prompt Pay Act), and for violation of Ohio's Civil Violations for Criminal Acts, Ohio Revised Code § 2307.60. (*Id.* ¶¶ 68–73.) The Amended Complaint contains both collective and class action allegations. (*Id.* ¶¶ 46–60.)

### A. The Parties

Defendant Honda "is a firm consisting of . . . automobile manufacturing facilities in the U.S. related to frame, engine, transmission, and related engineering and purchasing operations[.]" (*Id.* ¶ 14.) Plaintiff Albert was employed by Honda as an hourly equipment service technician from approximately October 2020 to October 24, 2023. (Albert Decl., ECF No. 75-16, ¶ 2.) Honda classifies and pays Plaintiff Albert, as well as the opt-ins in this collective action, as nonexempt employees. (*Id.* ¶ 4.)

### B. The Kronos Outage

Honda uses two systems to timely pay its employees their wages: (1) a timekeeping function where employees clock in and out using Kronos time clocks; and (2) a payroll function, which transmits on-site timekeeping data via a Kronos-hosted-cloud server to payroll. (Bailey Decl. ¶ 3.) On December 11, 2021, a ransomware cyber-attack on Honda's Kronos timekeeping system rendered the system inoperable for about two months (the "Kronos Outage"). (*Id.* ¶ 4; Alloway Decl. ¶ 3.) During the Kronos Outage, Honda was unable to access the time data saved to the timekeeping system. (*Id.* ¶ 6.) Without access to Kronos, Honda was unable to determine the amount of time worked by each employee and could not calculate weekly pay for its employees. (*Id.* ¶¶ 3, 5–7, 10; Bailey Decl. ¶¶ 3–4, 8.) Honda did not have a backup or alternate timekeeping system. (Bailey Tr., ECF No. 74-1, 25:10–14.)

On December 16, 2021, five days after the Kronos Outage, Honda needed to issue paychecks. (Alloway Decl. ¶ 7.) Unable to determine whether any nonexempt employees were

entitled to overtime compensation, Honda chose to pay these employees for 40 hours at their regular rate of pay. (*Id.* ¶¶ 8–11.) These paychecks did not account for any overtime that may have been due. (*Id.*)

In the second week of the outage, Honda announced that it would offer employees affected by the Kronos Outage a $1,000 interest-free loan beginning on December 23, 2021. (*Id.* ¶ 13.) Honda also implemented a new compensation method, labeled the "40 plus 3 Pay Method." (*Id.* ¶¶ 14–15.) Under the 40 plus 3 Pay Method, Honda paid all nonexempt employees for 40 hours at their regular rate and for three hours at their overtime rate. (*Id.*) For the second week of the outage, Honda paid 40 hours plus six overtime hours, with three of those overtime hours being to pay for the first week of the Kronos Outage when nonexempt employees did not receive any overtime compensation. (*Id.*)

Honda used the 40 plus 3 Pay Method until on or around December 30, 2021. (*Id.* ¶ 20.) On December 30, Honda transitioned to a new timekeeping system using PeopleSoft, which acted like a less-sophisticated Kronos. (*Id.* ¶¶ 17–21.) The PeopleSoft system required nonexempt employees to manually complete their timesheets, which department managers and other supervisors reviewed, adjusted, or approved, and then entered into the PeopleSoft system. (*Id.*) Honda used the PeopleSoft system until about February 9, 2022, which covered weeks five through ten of the Kronos Outage. (*Id.* ¶¶ 20–21.)

After the tenth week of the outage, Honda decided it could safely begin to return to the Kronos timekeeping system. (*Id.* ¶ 21.) The Kronos Outage had been resolved for most employees on February 10, 2022 and for on the rest on February 17, 2022. (Bailey Decl. ¶ 6.)

### C.  The Reconciliation Process

Honda issued a memorandum to its nonexempt employees on February 10, stating that it had started a reconciliation process that would rectify discrepancies between the amount paid

4

under the 40 plus 3 Pay Method and the amount that should have been paid while Kronos was offline or operating with limited functionality. (Alloway Decl. ¶¶ 21–23; ECF No. 32-2, PageID 441–43.) Linda Bailey, former Compliance Officer for Honda, took a lead role in managing that process, which involved around 20,000 affected employees. (Bailey Decl. ¶ 8.)

The process involved analyzing about three million Kronos time swipes, recovering missing scans, and reviewing call-in and leave-of-absence records. (*Id.* ¶¶ 10–11, 17.) It also involved a data quality check process. (*Id.*) A company called Alight Solutions, which Honda had worked with on benefits administration, assisted with the reconciliation process. (*Id.* ¶¶ 14–24.) The process took place from early February 2022 until late April 2022. (*Id.*) Various issues with the timekeeping data took time to resolve. (*Id.* ¶¶ 16–22.) Throughout the reconciliation process those leading the process at Honda and Alight had to coordinate with Honda department leads on decision making and approval; reports had to be re-run on employee time, pay, and schedules; and data had to be manually adjusted. (*Id.* ¶ 19.)

Honda began issuing reconciliation payments on April 27, 2022. (Alloway Decl. ¶ 28.) At the end of the reconciliation process, Honda made available employees reconciliation statements that included information about (1) the hours for which they were paid; (2) the dollar amounts they were paid; (3) the hours for which they should have been paid; (4) the total reconciliation payment for each week. (*Id.* ¶ 27.) It issued approximately 20,000 reconciliation statements. (*Id.*) Honda set up a hotline for employees to ask questions about the reconciliation process and their payments. (*Id.* ¶ 29.) Honda also created an email address to which employees could submit inquiries. (*Id.* ¶ 31.)

### D.  Honda's Payments to Plaintiff Albert

Honda paid Plaintiff Albert a gross amount of $2,071.42 on April 27, 2022, through the reconciliation process. (Bailey Decl. ¶ 34.) That total included $1,883.11 in unpaid wages and $188.31 as an inconvenience payment (10% of total unpaid wages). (*Id.* ¶¶ 34–37.)

On May 21, 2022, Plaintiff Albert submitted a dispute about the accuracy of his reconciliation payment for the second, third, fourth, fifth, and ninth weeks of the Kronos Outage. (*Id*. ¶¶ 38–39.) After researching Plaintiff Albert's dispute, Honda decided it would pay Plaintiff Albert for all hours and at all pay codes he asserted for each of the five disputed weeks. (*Id.* ¶ 40.) That resulted in a payment in the amount of $798.78 plus another inconvenience payment of $79.88 for a total of $876.66, which Honda paid to Plaintiff Albert on July 14, 2022. (*Id.*) Honda also decided it owed him an additional $755.06, an attendance bonus, which was paid to him on June 23, 2022. (*Id.* ¶ 41.) In total, Honda paid Plaintiff Albert $3,703.14 in connection with the Kronos Outage. (*Id.*)

## II.    PROCEDURAL BACKGROUND

Honda moved for summary judgment early in Plaintiff Albert's case. (ECF No. 37.) After Plaintiff Albert filed a Federal Rule of Civil Procedure 56(d) motion, the parties jointly moved to extend the time for Plaintiff to respond to conduct discovery, and the Court granted that joint motion. (ECF Nos. 39, 40.)

The three other above-captioned actions—*Tripoli v. Honda Dev. & Mfg. of Am., LLC*, 2:22-cv-03828, *Scarbrough v. Honda Dev. & Mfg. of Am., LLC*, 2:22-cv-04277, and *Whatley v. Honda Dev. & Mfg. of Am., LLC*; 2:22-cv-04372—were filed after Plaintiff Albert's action and allege similar violations of federal and state law because of Honda's Kronos Outage. (January 2023 O&O, ECF No. 58, PageID 723–25.) Upon the parties' request, the Court consolidated the four actions in January 2023. (ECF No. 55; January 2023 O&O.) In the same January 2023

Opinion and Order, the Court stayed the consolidated case, finding persuasive Honda's argument that the Court should enter a stay because a controlling issue—the applicable legal standard for court-facilitated notice in collective actions under the FLSA—was before the Sixth Circuit in the cross-appeals captioned *Brooke Clark et al. v. A&L Home Care and Training Center LLC, et al.*, Sixth Circuit Case Nos. 22-3101 and 22-3102. (*Id.* PageID 729–33.)

The Court lifted the stay about a half a year later when the *A&L Home Care* opinion was published and reactivated the Motion for Summary Judgment, but, upon request, the Court issued more briefing extensions on the summary judgment motion because of discovery disputes. (ECF Nos. 65, 67, 68, 97.) While the discovery disputes were ongoing, Named Plaintiffs Albert, Tripoli, Scarbrough, and Whatley filed a Motion to Facilitate Court-Authorized Notice to Other Similarly Situated Potential Plaintiffs (Notice Motion, ECF No. 75), and that Motion was briefed. The Court found it prudent to rule on the Notice Motion before the summary judgment motion. (Sept. 2024 O&O, ECF No. 106, PageID 1760.)

The Notice Motion was granted in part and denied in part. (*Id.* PageID 1774.) This Court concluded that "Named Plaintiffs have shown a strong likelihood of similarly situatedness, but the proposed notice must be revised," and ordered the parties to meet and confer and submit an updated proposed notice consistent with the Court's findings in the September 2024 Opinion and Order. (*Id.*) The parties complied (ECF No. 108), and the Court approved the revised notice, consent form, and cover email (ECF No. 110).

Since notice was sent out, 27 notices of filing consent forms have been filed, most containing multiple opt-ins. (ECF Nos. 114–129; 131–142.) The Court noted in its September 2024 Opinion and Order that the instant Motion for Summary Judgment applied only to Plaintiff Albert's claims (ECF No. 106, PageID 1760, 1764 n.2), and Honda observes the narrow

application of the Opinion and Order in its reply brief (ECF No. 97, PageID 1648 ("[T]his motion is not about other associates; it is about Michael Albert.")).

## III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

## IV. ANALYSIS

The focus of Honda's Motion is that judgment should be entered in its favor because there is no dispute that it has paid Plaintiff Albert for all overtime worked. (ECF No. 37, PageID 524.) The only potential relief available to Plaintiff Albert under the FLSA, says Honda, is

8

liquidated damages, which he also cannot obtain. (ECF No. 97, PageID 1649.) Honda urges that it paid Plaintiff Albert any additional earned overtime compensation as soon as practicable after the regular pay period, relying on U.S. Department of Labor regulation 29 C.F.R. § 778.106. (ECF No. 37, PageID 526.)

Plaintiff Albert responds that Honda did not pay him for all hours of overtime worked until mid-July 2022, and so he should receive liquidated damages under the FLSA and under Ohio's Prompt Pay Act. (ECF No. 96, PageID 1626.) Plaintiff Albert argues that Honda did not act in good faith because it did not have a backup timekeeping system in place before the Kronos Outage. (*Id.*) Without citing to evidence in the record, Plaintiff says Honda was warned by Kronos's operators that the system could become unavailable, and Honda knew that it had duties under the FLSA, but did not have a backup plan in place that would have allowed it to continue recording employee time in case Kronos went down. (*Id.*) Plaintiff Albert argues that "Honda does not even try to argue it acted in good faith," but "that is the requisite showing that *it* must make under 29 U.S.C. § 260 to avoid the imposition of statutory damages for a FLSA violation." (*Id.* PageID 1630 (emphasis in original).)

## A. FLSA Claim

The FLSA dictates that covered employees who work more than 40 hours per workweek shall be paid overtime compensation at a rate not less than one and one-half times their regular pay. 29 U.S.C. § 207(a)(1). Employers who violate this requirement shall be liable in the amount of the employee's unpaid overtime compensation and an amount of liquidated damages. 29 U.S.C. § 216(b).

To prevail on an unpaid overtime claim, a plaintiff must first prove that an employer-employee relationship existed. 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees . . . ."). Second, the plaintiff must show that the employer or its employees are

engaged in interstate commerce. *Id.*; *see also Bey v. WalkerHealthCareIT, LLC*, No. 2:16-cv-1167, 2018 WL 2018104, at *3–4 (S.D. Ohio May 1, 2018) (Smith, J.). Third, the employees must show that they worked more than 40 hours per workweek and were not paid overtime. *Dep't of Lab. v. Americare Healthcare Servs., LLC*, 762 F. Supp. 3d 666, 679 (S.D. Ohio 2025) (citing *Stansbury v. Faulkner*, 443 F. Supp. 3d 918, 925 (W.D. Tenn. 2020) (describing this factor test)). The parties do not dispute elements one and two articulated above; their arguments are about the third element.

The purpose behind the FLSA provides sturdy guardrails to the Court's analysis: the statute was passed by Congress with "broad remedial intent" to address "unfair method[s] of competition in commerce" that cause "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 396 (6th Cir. 2017) (citing *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015); 29 U.S.C. § 202(a)). This remedial statute "must not be interpreted or applied in a narrow, grudging manner." *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002) (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 597 (1944), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251–262).

### 1. A case or controversy exists.

Honda asserts no case or controversy exists because it has paid Plaintiff Albert for all overtime worked during the Kronos Outage. (ECF No. 37, PageID 524–26.) Honda explains that Plaintiff Albert worked overtime (as defined by the FLSA[1]) in three of the ten Kronos Outage

---

[1] Honda pays employee overtime pay in other circumstances for which the FLSA does not require overtime pay. (ECF No. 37, PageID 525.)

weeks. (*Id.*) Here is a chart created by the Court summarizing the information in Honda's

Motion:

| Week of Kronos Outage | Plaintiff Albert Total Hours Worked | Overtime Hours Worked | Hours Paid for During that Pay Period | Overtime Hours Not Paid During that Pay Period |
|---|---|---|---|---|
| 1 | 45.48 | 5.48 | 40 | 5.48 |
| 8 | 59.17 | 19.17 | 55.45 | 3.72 |
| 9 | 66.79 | 26.79 | 66.7 | 0.09 |

(*see* ECF No. 37, PageID 525 (citing Bailey Decl. ¶¶ 35–36).) Honda explains that it paid

Plaintiff Albert the "gross amount of $2,071.42 as a reconciliation payment, which included

$1,883.11 in underpayments during the Kronos Outage, and another $188.31" as an

inconvenience payment of 10% of the underpayment. (*Id.*)

Plaintiff Albert, and all other Honda employees affected by the Kronos Outage, were then

afforded the opportunity to dispute any reconciliation payments. (Bailey Decl. ¶ 38.) Plaintiff

Albert disputed the accuracy of his reconciliation payment including those attributed to weeks

two, three, four, five, and nine of the Kronos Outage. (*Id.* ¶ 39.) On July 14, 2022, Honda paid

Plaintiff Albert $878.66, which was 100% of what he alleged he was owed, and an

inconvenience payment of $87.87 (10% of the total disputed underpayment) for a total of

$966.53. (*Id.* ¶ 40.) Honda asserts that given it has paid Plaintiff Albert what he seeks in his

Amended Complaint plus a 10% inconvenience payment, he cannot maintain an overtime claim.

(*Id.*)

Plaintiff Albert responds that whether he has been paid all that he is owed is irrelevant

because "even if Plaintiff were to concede that he was paid all overtime due to him, he would

still have a valid claim under the FLSA for liquidated damages." (ECF No. 96, PageID 1637.)

Plaintiff Albert says it is undisputed that during the Kronos Outage there were multiple

workweeks during which Plaintiff worked overtime but was not promptly paid "on the next regular payday (and in fact, no attempts were made to pay those wages until many months later)." (*Id.*, PageID 1639.) Accordingly, Plaintiff Albert asserts he has a valid FLSA claim. (*Id.*)

While Honda's position might appear reasonable on the surface, it is incorrect as a matter of law. "Courts have long interpreted the FLSA as requiring that [overtime compensation payments] be timely made." *Herman*, 308 F.3d at 590 (citing *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 703–07 (1945) and other omitted sources); *Calderon v. Witvoet*, 999 F.2d 1101, 1108 (7th Cir. 1993) (Belated payment of wages is a violation of the FLSA.). The FLSA statute "is violated even if the employer eventually pays the overtime amount that was due." *Herman*, 308 F.3d at 590. So, although Honda eventually paid Mr. Albert what was due to him in late April 2022 or mid-July 2022 through the reconciliation process, an FLSA violation could have still occurred.

There is tension in Honda's brief in that Honda seems to concede a case or controversy exists where it argues "[t]he only *potential* relief available to him is liquidated damages which, for the reasons in the next section, he cannot obtain as a matter of law." (ECF No. 37, PageID 526 (emphasis in original).) A plaintiff is only entitled to liquidated damages if there was a violation of the FLSA in the first instance.

The parties do not cite to it, but a district judge in the Southern District of Iowa decided a similar issue on similar facts in *Gaul v. Accura Health Ventures, LLC*, 651 F. Supp. 3d 1054 (S.D. Iowa 2023). The plaintiff was an employee of a healthcare management company that operates skilled nursing and senior living facilities. *Id.* at 1057. She sued her employer after—as here—a ransomware attack took down the employer's Kronos timekeeping and payroll system, alleging that the employer had violated the FLSA and Iowa Wage Payment Collection Act when

it had failed to pay plaintiff the correct overtime rate for one pay period and failed to withhold enough taxes that period and in two subsequent pay periods. *Id.*

The employer argued that although it calculated the plaintiff's overtime wage rate too low during a pay period during the Kronos outage, the shortfall was "more than corrected in subsequent pay periods due to other mistakes and the interplay between gross earnings, tax withholdings, and net earnings." *Id.* at 1061. The Court rejected that argument. *Id.* at 1062–63. It declined to approve "an aggregated approach in which an overpayment of net wages in a subsequent pay period is interpreted retroactively as a correction for the underpayment in the first pay period." *Id.* at 1062. An FLSA problem created by undercalculating an overtime rate in one pay period cannot be cured by accidentally paying too much in net wages in later periods. *Id.*

*Gaul* is not directly on point. Here Honda's later overpayments were no accident—Honda was trying to reconcile missed overtime payments. But the fact that an employer paid an employee backpay in the form of unpaid overtime compensation—in Mr. Albert's case months later—does not somehow negate a potential FLSA violation and equate to no case or controversy.

### 2. 29 C.F.R. § 778.106

Honda's next argument is that it paid Plaintiff Albert earned overtime compensation as soon as was practicable after the regular pay period. (ECF No. 37, PageID 526–30.) To make this argument it relies on 29 C.F.R. § 778.106:

> There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of

13

> the amount due and in no event may payment be delayed beyond the next payday
> after such computation can be made.

29 C.F.R. § 778.106.

Honda cites a series of FLSA cases brought against cities involving this regulation to argue that Honda did what it should have within the confines of the resources it had available to it at that time and so it acted reasonably. (ECF No. 37, PageID 528–29.) Plaintiff Albert responds that Honda cannot successfully rely on 29 C.F.R. § 778.106 because to do so, Honda cannot demonstrate (as it must) that there are no material facts in dispute over whether its failure to timely and accurately pay overtime was reasonable. (ECF No. 96, PageID 1642.)

In *Parker v. City of New York*—the main case Honda relies on—the court granted the city's motion for summary judgment on the plaintiffs' FLSA claims, finding overtime payment was reasonable where overtime worked by the plaintiffs in week two of a pay period could not be included in the paycheck covering that pay period, but had to be included in the following pay period instead. No. 04 CV 4476 BSJDCF, 2008 WL 2066443 (S.D.N.Y. May 13, 2008). Week-two overtime was not submitted (and could not be submitted, the evidence showed) to the timekeepers until the Monday after the payroll calculation process and checks had been printed and delivered to the payroll administration office. *Id.*

The court found there were no triable issues, because the city had complied with 29 C.F.R. § 778.106. *Id.* It dismissed the plaintiffs' "variety of arguments focusing on theoretical alternatives to the current system that might reduce the delay in overtime payments," finding "that imposing upon Defendants an additional burden of further assessing theoretical alternatives would not only be impracticable but also well outside the scope of the FLSA." *Id.* at *12.

In *Bishop v. City of Philadelphia (Dep't of Prisons)*, which was also cited by Honda, the court explained that where there was a claim for delayed overtime payment, the Third Circuit's

14

test was whether the purported delay was "reasonably necessary." No. CV 20-3977, 2021 WL 4477097, at *13 (E.D. Pa. Sept. 30, 2021). The court found the delay in overtime pay was reasonably necessary where, in each of seven times when the plaintiff claimed to have received late overtime payment, he had been paid in the next pay period. (*Id.* at *14.) Courts made similar findings in the other cases cited by Honda. *See Nolan v. City of Chicago* 162 F. Supp. 2d 999, 1005 (N.D. Ill. 2001) (finding no overtime violation where the city's system did not wait for the next regular pay day, but issued overtime checks as soon as practicable but not later than the last day of the FLSA period after the time that the overtime was worked); *Cahill v. City of New Brunswick*, 99 F. Supp. 2d 464, 474 (D.N.J. 2000) (explaining that the apparent purpose of 29 C.F.R. § 778.106 is to "forgive employers who are not able to promptly pay overtime because of problems with accounting—or employee accountability"); *but see Dominici v. Bd. of Educ.*, 881 F. Supp. 315, 317 (N.D. Ill. 1995) (finding where delay in pay was "due to bureaucratic inertia" in setting up accounting procedures, there was an FLSA problem).

In the above cases where the courts found no FLSA overtime pay problem, the delayed overtime payment was made in the next pay period or before. That was not the case here. Honda paid Mr. Albert his reconciliation payment in late April 2022 and his contested overtime payment in mid-July 2022. After the Kronos Outage, Kronos became operable in early- to mid-February, and Mr. Albert was paid weekly. (*See* ECF No. 37-2, PageID 552.) Plaintiff Albert's late overtime payments were made many pay periods after being earned.

True, "natural disasters or similar events wholly beyond the control of the employer may in proper circumstances allow an employer to make late payments." *Dominici*, 881 F. Supp. at 320. Yet from the Court's vantage point, Honda has not demonstrated that Plaintiff Albert lacks

evidence that his overtime payments were delayed for a period longer than reasonably necessary. Honda's Summary Judgment Motion on Plaintiff Albert's FLSA claim is **DENIED**.

### 3. Backpay under the FLSA

Having determined that Honda has not met its burden on summary judgment, whether backpay is due to Plaintiff Albert under the FLSA remains for decision. Backpay need be assessed only if there is an FLSA violation, and the Court has not yet made that determination insofar as any motion for summary judgment by Plaintiff is not before the Court.[2]

### 4. Liquidated Damages under the FLSA

Similarly, it would be premature for the Court to decide whether Plaintiff Albert is due liquidated damages because it has made no finding that Honda violated the FLSA. Liquidated damages are the default for FLSA violations. 29 U.S.C.A. § 216(b) ("Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."). Indeed, liquidated damages are considered "compensation, not a penalty or punishment." *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (internal quotation marks and citations omitted). The Supreme Court explained in *Brooklyn Sav. Bank v. O'Neil*:

---

[2] In its reply, Honda submits that Plaintiff Albert fails to "challenge the specific hours he worked or the actual payments themselves that were made to him through a reconciliation process." (ECF No. 97.) Plaintiff Albert does fail to rebut the arguments Honda makes about Plaintiff Albert's hours worked or payments made to him by Honda. Backpay is likely not due. (*See generally* ECF No. 96); *see Smith v. Dolgen Midwest, LLC*, No. 2:19-CV-4333, 2020 WL 6044087, at *2 (S.D. Ohio Oct. 13, 2020) (plaintiff's failure to address defendant's statute of limitations arguments resulted in waiver). This conclusion is supported by Plaintiff Albert's concession below as to his claim under Ohio Revised § 4111.03. *See infra* Section IV.B.

> It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being.

324 U.S. 697, 707 (1945) (quoting 29 U.S.C. § 202(a)).

A district court has discretion, however, to deny an award of liquidated damages to a prevailing plaintiff "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the" FLSA. 29 U.S.C. § 260; *see also Elwell*, 276 F.3d at 840. While "liquidated damages are the norm and have even been referred to as 'mandatory' . . . if an employer demonstrates *both* good faith and reasonable grounds for [the act], then a court may exercise its discretion to limit or deny liquidated damages." *Casarez*, 2020 WL 1874132, at *10 (emphasis in original) (citing *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004)); *see Durr v. Diversified Health Mgmt., Inc.*, No. 2:20-CV-5429, 2021 WL 1186328, at *2 (S.D. Ohio Mar. 30, 2021) (Watson, J.) ("The burden on an employer to avoid liquidated damages is substantial and requires proof that [the employer's] failure to obey the statute was *both* in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." (citations and internal quotations omitted)).

Although Plaintiff Albert concedes that liquidated damages is "a legal issue where the burden is on the FLSA defendant to show it acted in good faith," he argues that "willfulness under the FLSA is an issue for the jury in which the burden is on the Plaintiff, and when found, necessitates the award of liquidated damages, as well as requiring a third year of liability." (ECF No. 96, PageID 1639.) To argue Honda willfully violated the FLSA, Plaintiff Albert focuses on (1) Honda's lack of an alternate time-keeping system and disaster recovery plan; and (2) Honda's

17

failure to use a "simple paper and pencil approach" to record time during the outage. (ECF No. 96, PageID 1639–40.) Plaintiff Albert concludes that "there are therefore a panoply of facts from which a jury could conclude Honda acted willfully." (*Id.* PageID 1641.)

Plaintiff Albert relies on this Court's decision in *Twaddle v. RKE Trucking Co.* to make its arguments about willfulness. No. 2:04-CV-557, 2006 WL 840388, at *2 (S.D. Ohio Mar. 29, 2006). But that case dealt with whether a three- or two-year statute of limitations applied to the plaintiffs' claims. The relevant provision of the FLSA states that an action is to be commenced "within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255. Whether a three- or two-years statute of limitations applies is not an issue here.

Honda's willfulness, lack thereof, good faith, and reasonableness are issues that relate solely to liquidated damages in this case. And if a violation of the FLSA is found and a liquidated damages determination is necessary, it will be Honda's burden to prove that its failure to obey the FLSA was in good faith and predicated upon reasonable grounds. Of course, Plaintiff Albert and the other opt-in plaintiffs in this action would have the opportunity to rebut any such evidence. But all of this is premature on this Motion. Honda moved for summary judgment as to Plaintiff Albert; Plaintiff Albert did not so move.

Honda has not met its burden on summary judgment and there remains an issue as to whether the FLSA was violated. The issue of liquidated damages is not yet before the Court.

**B. State Law Claims**

Having denied Honda Summary Judgment Motion on Plaintiff Albert's FLSA claim, the Court addresses the parties' arguments on Plaintiff Albert's state-law claims.

### 1. Ohio Overtime Compensation Statute

In his opposition brief, Plaintiff Albert states he is not contesting Honda's summary judgment motion on his overtime compensation statute claim under Ohio Revised Code Chapter 4111. (ECF No. 96, PageID 1627 n.1.) Section 4111.03(A) of the Ohio Revised Code provides that "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions" of the FLSA.

Given Plaintiff Albert's concession, the Court **GRANTS** Honda's Summary Judgment Motion for Plaintiff Albert as to part of Count Two in the Amended Complaint—specifically, the allegations that Honda has violated the Ohio overtime compensation statute, Ohio Revised Code § 4111.03. (*See* Am. Compl. ¶¶ 68–73.)

### 2. Ohio Prompt Pay Act

Plaintiff Albert alleges that Honda violated Ohio Revised Code § 4113.15(B), referred to as the Ohio Prompt Pay Act, when it failed to pay him and others in the pay periods in which compensation was earned during the Kronos Outage. (Am. Compl. ¶¶ 68–73.) Honda also moves for summary judgment on this claim.

Ohio Revised Code § 4113.15(B) provides:

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday . . . the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

Honda makes similar arguments on this claim as it does on its FLSA claim, that "the Kronos Outage made it impracticable for [Honda] to pay contemporaneously various forms of compensation and straight-time pay." (ECF No. 37, PageID 532.) Honda argues this claim fails because the parties do not dispute that Plaintiff Albert received all wages owed during the

Kronos Outage and a 10% inconvenience payment, which exceed the 6% penalty sought by Plaintiff Albert under Ohio Revised Code 4113.15. (*Id.*) Honda paid Plaintiff Albert a gross reconciliation payment of $2,071.42 on April 27, 2022—$1,883.11 in underpayments during the Kronos Outage, and another $188.31 in an inconvenience payment (*i.e.*, 10% of the underpayment). (*Id.* PageID 533.) Plaintiff Albert disputed the reconciliation amount, and Honda paid an additional $878.66 in adjustments and $87.87 for the inconvenience payment, for a total of $966.53 on July 14, 2022.

Plaintiff Albert responds the claim is not moot because "every late-paid Honda employee is entitled to recovery under [the Act] for every pay period, regardless of whether they have been fully repaid or not—because they are entitled to recover the greater percentage of any amount still outstanding *or* $200." (ECF No. 96, PageID 1644.) This argument relates to the collective, not Plaintiff Albert individually.

An issue remains as to whether Honda violated the Ohio Prompt Pay Act when it did not pay Plaintiff Albert his overtime payments due 30 days beyond the regularly scheduled payday. The parties avoid the details related to this 30-day timeline when analyzing Plaintiff Albert's claim, but he received reconciliation payments on April 27, 2022 and July 14, 2022, and the Kronos Outage occurred between December 11, 2021 and February 9, 2022, so such payments seemingly "remained unpaid for thirty days beyond the regularly scheduled payday." Ohio Rev. Code § 4113.15(B). The gravamen of the dispute between the parties is whether Honda owes liquidated damages under this statute given its 10% inconvenience payments, which are greater than the 6% penalty under the statute. (ECF No. 37, PageID 532; ECF No. 96, PageID 1644.) This dispute is premature given there has been no finding that the Ohio Prompt Pay Act has been

violated as a matter of law. Plaintiff Albert has not moved for summary judgment and Honda

does not concede a violation in its briefing.

Honda's Summary Judgment Motion as to Plaintiff Albert's Ohio Prompt Pay Act claims

is **DENIED**.

### 3. Ohio Criminal Liability

Plaintiff Albert makes a claim under Ohio Revised Code § 2307.60, which provides civil

recovery for criminal acts. (Am. Compl. ¶¶ 68–73.) Honda moves for summary judgment on this

claim.

Section 2307.60(A)(1) states that "[a]nyone injured in person or property by a criminal

act has, and may recover full damages in, a civil action." Plaintiff Albert's Amended Complaint

alleges that:

> A willful violation of the FLSA is a criminal act. 29 U.S.C. § 216(a). By its acts
> and omissions described herein, Defendant has willfully violated the FLSA, and
> O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to
> recover damages in a civil action, including exemplary and punitive damages.

(Am. Compl. ¶ 73 n.5.)

Honda argues this claim fails for two reasons. First, Plaintiff Albert cannot show an

injury because he was paid for all time worked. (ECF No. 37, PageID 534.) Next, Honda asserts

Plaintiff Albert cannot show a willful violation. (*Id.*) Plaintiff Albert retorts that whether Honda

acted willfully is an issue for the trier of fact. (ECF No. 96, PageID 1645.)

The Court has made no finding that the FLSA was violated yet. Further, because

disposition of this state law cause of action will necessarily overlap with this Court's

determination on liquidated damages (if a violation is established), specifically Honda's good

faith, reasonableness, or willfulness, the Court **HOLDS IN ABEYANCE** its ruling on this

claim.

V.    **CONCLUSION**

For the above reasons, the Motion for Summary Judgment by Defendant Honda

Development & Manufacturing of America, LLC (ECF No. 37) is **GRANTED in part,**

**DENIED in part, and HELD IN ABEYANCE in part**. Honda's Motion is granted on Plaintiff

Albert's claim under the Ohio overtime compensation statute, Ohio Revised Code § 4111.03.

The Court holds in abeyance its ruling on Plaintiff Alberts claim under Ohio Revised Code

§ 2307.60. The remainder of Honda's Motion is denied.

This case remains open.

**IT IS SO ORDERED.**


**7/24/2025**                                                **s/Edmund A. Sargus, Jr.**
**DATE**                                                     **EDMUND A. SARGUS, JR.**
                                                             **UNITED STATES DISTRICT JUDGE**