UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ALBERT, on behalf of himself and all others similarly situated,<br>　　　　*Plaintiff,* | ) ) ) ) | Case No. 2:22-cv-00694 |
| v. | ) ) | Judge Edmund A. Sargus, Jr. |
| HONDA DEVELOPMENT & MANUFACTURING OF AMERICA, LLC<br>　　　　*Defendant.* | ) ) ) ) | Magistrate Judge Kimberly A. Jolson |

| | | |
|---|---|---|
| TREVOR TRIPOLI, on behalf of himself and all others similarly situated,<br>　　　　*Plaintiff,* | ) ) ) ) | Case No. 2:22-cv-3828 |
| v. | ) ) | Judge Edmund A. Sargus, Jr. |
| HONDA DEVELOPMENT & MANUFACTURING OF AMERICA, LLC<br>　　　　*Defendant.* | ) ) ) ) | Magistrate Judge Kimberly A. Jolson |

| | | |
|---|---|---|
| BRANDON WHATLEY, on behalf of himself and all others similarly situated,<br>　　　　*Plaintiff,* | ) ) ) ) | Case No. 2:22-cv-4372 |
| v. | ) ) | Judge Edmund A. Sargus, Jr. |
| HONDA DEVELOPMENT & MANUFACTURING OF AMERICA, LLC<br>　　　　*Defendant.* | ) ) ) ) | Magistrate Judge Kimberly A. Jolson |

| | | |
|---|---|---|
| MELISSA SCARBROUGH, on behalf of himself and all others similarly situated,<br>　　　　*Plaintiff,* | ) ) ) ) | Case No. 2:22-cv-4277 |
| v. | ) ) | Judge Edmund A. Sargus, Jr. |
| HONDA DEVELOPMENT & MANUFACTURING OF AMERICA, LLC<br>　　　　*Defendant.* | ) ) ) ) | Magistrate Judge Kimberly A. Jolson |

i

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT AND PRELIMINARY CERTIFICATION OF THE PROPOSED CLASS**

Michael Albert ("Albert"), Trevor Tripoli ("Tripoli"), Brandon Whatley ("Whatley"), and Melissa Scarbrough ("Scarbrough") (collectively, "Plaintiffs") and Honda Development & Manufacturing of America, LLC ("Defendant" or "Honda") (collectively, the Parties), respectfully and jointly move the Court to preliminarily approve the Settlement described herein by (1) preliminarily certifying the proposed Class and preliminarily approving the proposed Settlement of Class Members' claims pursuant to Fed. R. Civ. P. 23(e); (2) conditionally approving[1] the proposed settlement of Collective Members' claims pursuant to the Federal Labor Standards Act, 29 U.S.C. § 216(b); (3) approve a proposed Notice to be sent to Class and Collective Members; (4) appoint SCOTT & WINTERS LAW FIRM, LLC, KLAFTER LESSER LLP, PARMET PC, and MORGAN & MORGAN, P.A. as Class Counsel; and (5) schedule a Final Settlement (Fairness) Approval Hearing. A Proposed Order Granting Preliminary Approval of Settlement is attached as Exhibit C. The Parties' Memorandum in Support of this motion is attached to this Motion.

---

[1] Although Collective Members previously affirmatively opted into this matter following this Court's Order conditionally certifying the Collective (*see* ECF No. 106), the proposed Notice nevertheless affords these individuals an opportunity to be heard regarding the resolution of their claims. Specifically, the Notice allows Collective Members to object to the Settlement terms before the Court makes its final determination as to whether the Collective part of the Settlement constitutes a fair and reasonable resolution of a *bona fide* dispute.

Respectfully Submitted,

/s/ Joseph F. Scott
Joseph F. Scott (0029780) (Trial Counsel)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
(216) 912-2221
11925 Pearl Rd., Suite 308
Strongsville, Ohio 44136
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

Seth R. Lesser (admitted *pro hac vice*) (Trial Counsel)
Christopher M. Timmel (admitted *pro hac vice*)
**KLAFTER LESSER LLP**
2 International Dr., Suite 350
Rye Brook, New York 10573
(914) 934-9200
seth@klafterlesser.com
christopher.timmel@klafterlesser.com

Matthew Scott Parmet (admitted *pro hac vice*)
**PARMET PC**
3 Riverway, Suite 1910
Houston, Texas 77056
(713) 999-1187
matt@parmet.law

*Attorneys for Plaintiff and Proposed Fed. R. Civ. P. R. 23 Class Counsel*

TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................... 1

The proposed Class and Collective Action Settlement Agreement warrants preliminary approval because it presents a fair, reasonable, and adequate resolution of a bona fide dispute concerning Defendant's failure to pay earned overtime during the Kronos Outage. The Settlement effectively resolves both the FLSA collective claims of approximately 1,264 members and the Fed. R. Civ. P. 23 Ohio wage law claims of approximately 8,797 class members. The proposed Settlement satisfies all requirements of Fed. R. Civ. P. 23(e) and the FLSA, 29 U.S.C. § 216(b), including by having been achieved through difficult, arm's-length negotiations facilitated by an experienced mediator.

II.    THE LITIGATION .......................................................................................... 4

The proposed settlement was reached only after extensive, hotly contested litigation over Defendant's alleged failure to pay earned overtime during the Kronos Outage. Plaintiffs vigorously prosecuted claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, and Ohio wage law, including O.R.C. §§ 4111.03, 4113.15, and 2307.60. The parties engaged in substantial factual and expert discovery, briefed a motion for summary judgment under Fed. R. Civ. P. 56, and litigated collective notice before ultimately reaching an agreement through arm's-length negotiations facilitated by an experienced private mediator.

    A.    The Claims and Issues ................................................................... 4

    B.    Conditional Collective Certification ............................................ 5

    C.    Summary Judgment ...................................................................... 5

    D.    Investigation, Discovery, Document Analysis, and Research ............. 6

    E.    Class Certification......................................................................... 6

    F.    Trial............................................................................................... 6

    G.    Settlement Negotiations ............................................................... 7

III.   THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS ......................... 7

The settlement provides a fair, equitable, and comprehensive resolution of all federal wage claims under the FLSA, 29 U.S.C. § 216(b), and state claims under Fed. R. Civ. P. 23(e). Defendant has agreed to pay a Maximum Gross Settlement Amount of $2,300,000, which will be distributed to all participating Class and Collective Members. The allocation is structured equitably, accounting for attorneys' fees of up to 40% plus costs, specified Service Awards for the named Plaintiffs, and necessary administrative settlement expenses, with uncashed funds or opt-out shares to be reallocated to settlement participants.

    A.    The Scope of Settlement ............................................................... 7

B.     The Proposed Settlement Payments and Distributions ........................................... 8

IV.     THE PROPRIETY OF PRELIMINARY APPROVAL OF THE SETTLEMENT ......... 10

The proposed settlement satisfies all legal prerequisites for preliminary approval and class certification. The FLSA settlement represents a fair and reasonable resolution of a bona fide dispute under 29 U.S.C. § 216(b). Furthermore, the Rule 23 class settlement satisfies the fairness factors of Fed. R. Civ. P. 23(e)(2) and the certification prerequisites of numerosity, commonality, typicality, adequacy, predominance, and superiority under Fed. R. Civ. P. 23(a) and 23(b)(3). Finally, the proposed Notice clearly and accurately informs class members of their rights, constituting the "best notice that is practicable" under Fed. R. Civ. P. 23(c)(2)(B).

A.     The Proposed Settlement Qualifies for Conditional Court Approval under the FLSA, 29 U.S.C. § 216(b) ................................................................................. 10

B.     The Proposed Settlement Qualifies for Preliminary Approval under Rule 23 ..... 17

       1.     Preliminary Approval of the Proposal Under Civil Rule 23(e)(2)............ 19

             a.    Adequacy of Representation by Class Counsel and Plaintiff Albert – Rule 23(e)(2)(A)……………………………………………………..19

             b.    Arm's Length Negotiation-Rule 23 (e)(2)(B)………….……………20

             c.    The Relief is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal-Rule 23(e)(2)(C)(i)……………………...21

             d.    The Relief is Adequate, Taking into Account the Effectiveness of the Proposed Method of Distribution-Rule 23(e)(2)(C)(ii) ……………22

             e.    The Relief is Adequate, Taking into Account the Terms of the Proposed Award of Attorney's Fees- Rule 23(e)(2)(C)(iii)…………22

             f.    The Relief is Adequate, Taking into Account Agreements Required to be Identified Under Rule 23(e)(3)- Rule 23(e)(2)(C)(iv)…………25

             g.    The Settlement Treats Class Members Equitably Relative to Each Other-Rule 23(e)(2)(D)……………………………………………25

       2.     Approval of the Proposal under Civil Rule 23(e)(1)(B)(ii) ...................... 25

C.     Plaintiff Albert Should be Appointed Class Representative and Class Counsel Should be Appointed Class Counsel.................................................................... 33

D.     The Proposed Notice Should Be Approved – Rule 23(c)(2)(B) ........................... 35

V.    CONCLUSION........................................................................................................... 36

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adams v. Standard Knitting Mills, Inc.,* [1978 Transfer Binder],
    Fed. Sec. L. Rep. (CCH) P 96, 1978 U.S. Dist. LEXIS 20317 (E.D. Tenn. Jan. 6, 1978) .........................24

*Afro American Patrolmen's League v. Duck,*
    503 F.2d 294 (6th Cir. 1974).........................................................................................27

*Amchem Prods. v. Windsor,*
    521 U.S. 591, 117 S. Ct. 2231 (1997)...........................................................................26, 32

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455, 133 S. Ct. 1184 (2013)..................................................................................31

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir.2007)..............................................................................................31

*Brittmon v. Upreach LLC,* No. 2:17-cv-219
    2018 U.S. Dist. LEXIS 224730 (S.D. Ohio Nov. 8, 2018)…………………………………..25

*Brotherton v. Cleveland,*
    141 F. Supp. 2d 907 (S.D. Ohio 2001) .............................................................................24

*Busby v. Bonner,* W.D.Tenn., No. 2:20-cv-2359-SHL-atc,
    2021 U.S. Dist. LEXIS 173421 (Jan. 28, 2021) ...............................................................18

*Carnegie v. Household Int'l, Inc.,*
    376 F.3d 656 (7th Cir. 2004)........................................................................................32, 33

*Castillo v. Morales, Inc.,*
    302 F.R.D. 480 (S.D. Ohio 2014) ..................................................................................26, 27

*Coleman v. Amazon.com, Inc.,* No. 2:21-cv-02200-SHM-atc,
    2025 U.S. Dist. LEXIS 215075, (W.D. Tenn. Oct. 31, 2025) ...........................................24

*Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08–CV–1119,
    2011 WL 292008 (S.D. Ohio Jan.26, 2011) ....................................................................23

*Crawford v. Lexington-Fayette Urban Cty. Govt.,* E.D. Ky., No. 06-299-JBC,
    2008 U.S. Dist. LEXIS 90070 (Oct. 23, 2008) .................................................................11

*Dillow v. Home Care Network, Inc.,*
    2017 U.S. Dist. LEXIS 85788 (S.D. Ohio June 5, 2017) ..............................................26, 28

*Dillworth v. Case Farms Processing, Inc.,* N.D. Ohio No. 5:08-cv-1694,
    2010 U.S. Dist. LEXIS 20446 (Mar. 8, 2010)…………………………………………20, 21, 23

*Dorsey v. Aviva Metals, Inc.,* No. 1:20-cv-02014,
    2022 U.S. Dist. LEXIS 176562 (N.D. Ohio Sep. 28, 2022)…………………………………..27

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ............................................... 35

*Fitzgerald v. P.L. Marketing,* W.D.Tenn., No. 2:17-cv-02251-SHM-cgc,
    2020 U.S. Dist. LEXIS 117220 (July 2, 2020) ....................................................... 18

*Ganci v. MBF Inspection Servs., Inc.,*
    323 F.R.D. 249 (S.D. Ohio 2017) ..............................................................................26, 27

*Gentrup v. Renovo Servs., LLC,* S.D. Ohio, No. 1:07CV430,
    2011 U.S. Dist. LEXIS 67887 (June 24, 2011) ...................................................... 11

*Glazer v. Whirlpool Corp.,*
    678 F.3d 409 (6th Cir. 2012)....................................................................................... 17

*Granada Invs., Inc. v. DWG Corp.,*
    962 F.2d 1203 (6th Cir.1992) ...............................................................................11, 12

*Hainey v. Parrott,*
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ..................................................................... 16

*Herrera v. Wells Fargo Bank, N.A.,* No. SACV 18-332JVS(MRWx),
    2021 U.S. Dist. LEXIS 170195 (C.D. Cal. June 8, 2021) ....................................... 18

*Howes v. Atkins,*
    668 F. Supp. 1021 (E.D. Ky. 1987) ......................................................................... 24

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996)...............................................................................19, 30

*In re Broadwing, Inc. ERISA Litig.,*
    252 F.R.D. 369 (S.D. Ohio 2006) .........................................................................16, 24

*In re Cincinnati Gas & Elec.,*
    643 F. Supp. 148 (S.D. Ohio 1986)........................................................................... 24

*In re MyFord Touch Consumer Litig.,*
    2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 29, 2019) ....................................... 18

*In re S. Ohio Corr. Facility*,
  173 F.R.D. 205 (S.D. Ohio 1997) ........................................................................................24

*In re Telectronics*,
  137 F. Supp. 2d.....................................................................................................................24

*In re Visa Check/Mastermoney v. Visa*,
  280 F.3d 124 (2d Cir.2001).................................................................................................31

*In re Whirlpool*,
  722 F.3d 852 ................................................................................................................ *passim*

*Jackson v. Trubridge*,
  2017 U.S. Dist. LEXIS 193782 (N.D. Ohio Jan. 26, 2017) ................................................17

*Kogan v. AIMCO Fox Chase, L.P.*,
  193 F.R.D. 496 (E.D. Mich. 2000).......................................................................................24

*Kopaleishvili v. Uzbek Logistics Inc*., No. 1:17-cv-702,
  2019 U.S. Dist. LEXIS 209529 (S.D. Ohio Dec. 4, 2019)………………………………29

*Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729,
  2012 U.S. Dist. LEXIS 74994 (S.D. Ohio May 30, 2012)................................................ *passim*

*Landsberg v. Acton Ents., Inc.*,
  2008 WL 2468868 (S.D. Ohio June 16, 2008)....................................................................11

*Lonardo v. Travelers Indemnity Co.*,
  706 F. Supp. 2d 766 (N.D. Ohio 2010) ..........................................................................17, 23

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ...........................................................................................11

*Marietta Mem'l Hosp.*, No. 2:15–CV–2956,
  2017 WL 3977956 (S.D. Ohio Sept. 11, 2017)...................................................................27

*Noll v. Flowers Foods Inc.*, No. 1:15-cv-00493-LEW,
  2022 U.S. Dist. LEXIS 75349 (D. Me. Apr. 26, 2022) .......................................................18

*Padovano v. FedEx Ground Package Systems*,
  2019 U.S. Dist. LEXIS 107092 (W.D.N.Y. June 10, 2019) ................................................18

*Parkhill v. Minn. Mut. Life Ins. Co.*,
  188 F.R.D. 332 (D. Minn. 1999).........................................................................................28

*Powers v. Hamilton Cnty. Pub. Defender Comm'n,*
 501 F.3d 592 (6th Cir. 2007)............................................................................29

*Rawlings v. Prudential-Bache Properties,*
 9 F.3d 513 (6th Cir.1993)..................................................................................23

*Rapp v. Forest City Technologies, Inc.,* No. 1:20-cv-2059,
 2021 U.S. Dist. LEXIS 131540 (N.D. Ohio July 15, 2021)…………………………..25

*Redington v. Goodyear Tire & Rubber Co.,*
 2008 U.S. Dist. LEXIS 64639 (N.D. Ohio Aug. 23, 2008) ...............................12

*Salinas v. United States Xpress Enters., Inc.,* No. 1:13-cv-00245-TRM-SKL,
 2018 U.S. Dist. LEXIS 50800 (E.D. Tenn. Mar. 8, 2018) .................................24

*Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343,
 2017 U.S. Dist. LEXIS 35584 (Mar. 13, 2017)……………………………………………16

*Schulte, Inc. v. Gangi,*
 328 U.S. 108, 66 S. Ct. 925, 90 L. Ed. 1114 (1946)........................................11

*Snelling v. ATC Healthcare Servs. Inc.,* No. 2:11-CV-00983,
 2012 U.S. Dist. LEXIS 172052 (S.D. Ohio Dec. 4, 2012).................................27

*Sprague v. Gen. Motors Corp.,*
 133 F.3d 388 (6th Cir. 1998).............................................................................29

*Steigerwald v. BHH, LLC,*
 2016 U.S. Dist. LEXIS 21116 (N.D. Ohio Feb. 22, 2016)................................26

*Stephenson v. Family Sols. of Ohio, Inc.,* No. 1:18cv2019,
 2021 U.S. Dist. LEXIS 65421 (N.D. Ohio Apr. 5, 2021) .................................25

*Swigart v. Fifth Third Bank,*
 288 F.R.D. 177 (S.D. Ohio 2012) ...........................................................26, 27, 28

*Swigart v. Fifth Third Bank,* S.D. Ohio, No. 1:11-cv-88,
 2014 U.S. Dist. LEXIS 94450 (July 11, 2014)..................................................23

*Swinton v. SquareTrade, Inc.,*
 2019 U.S. Dist. LEXIS 25458 (S.D. Iowa Feb. 14, 2019) ................................19

*UAW v. General Motors Corp.,*
 497 F.3d 615 (6th Cir. 2007)..............................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 131 S. Ct. 2541 (2011) ...........................................................................................28

*Yorba v. Barrington School, LLC*, S.D. Ohio, No. 2:21-cv-691,
    2022 U.S. Dist. LEXIS 118230 (July 5, 2022) ............................................................. *passim*

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ...................................................................................... *passim*

*Zego v. Meridian-Henderson*, S.D. Ohio No. 2:15-CV-3098,
    2016 U.S. Dist. LEXIS 132320 (Sep. 27, 2016) .................................................................11

*Zehentbauer Fam. Land LP v. Chesapeake Expl., L.L.C.,* No. 4:15-cv-2449,
    2018 U.S. Dist. LEXIS 121728, 2018 WL 3496089 (N.D. Ohio July 20, 2018) ......................27

## Statutes, Rules & Regulations

29 U.S.C. § 207 .................................................................................................................... *passim*

Ohio Revised Code § 2307.60 ...................................................................................................5

Fed. R. Civ. P. R. 23 ............................................................................................................ *passim*

Fed. R. Civ. P. 30 ................................................................................................................. *passim*

Fed. R. Civ. Pro. 56(d) ..............................................................................................................5

29 C.F.R. §§ 516.2, 516.6 ........................................................................................................33

## Other Authorities

Manual for Complex Litigation at § 21.312 ..........................................................................2, 35

<u>**MEMORANDUM IN SUPPORT**</u>

## I.  INTRODUCTION

The *Class and Collective Action Settlement Agreement* ("Settlement" or "Settlement Agreement"), attached to this Motion as Exhibit A, includes an opt-out Class Settlement pursuant to Fed. R. Civ. P. 23 pertaining to Ohio Wage law claims and a Collective Settlement pursuant to the Federal Labor Standards Act ("FLSA") pertaining to the claims under the FLSA. The claims asserted by the Class and Collective all relate to the Kronos Outage during period of December 1, 2021, to February 28, 2022, that have been asserted in the above-referenced actions ("Actions"). The Settlement will resolve the claims of all Plaintiffs, all members of the Collective previously certified by this Court who timely opted into the Actions (also referred to as "Collective Members"), and to all members of the proposed Class (also referred to as "Class Members") who do not timely request exclusion from the Class. The Rule 23 Class definition is as follows:

> All current and former employees of Defendant in the state of Ohio during the Kronos Outage Period, from December 1, 2021 to February 28, 2022, whose weekly work hours were usually or would usually have been tracked by the Kronos timekeeping system and who, during any one workweek during the Kronos Outage Period, were not paid overtime compensation in the amount of one and one-half times the employee's regular rate of pay for all hours worked over 40 in a week on the regular pay date following for the period in which such overtime hours were worked.

(Settlement Agreement, Ex. A at 4.)

The Collective previously certified by this Court is as follows:

> Plaintiffs and all other persons who filed consents to join the Actions under 29 U.S.C. § 216(b) and who were employed by Defendant during the Kronos Outage Period, from December 1, 2021 to February 28, 2022, whose weekly work hours were usually or would usually have been tracked by the Kronos timekeeping system and who, during any one workweek during the Kronos Outage Period, were not paid overtime compensation in the amount of one and one-half times the

1

> employee's regular rate of pay for all hours worked over 40 in a week on the regular
> pay date following for the period in which such overtime hours were worked.

(Settlement Agreement, Ex. A at 4.) There are approximately 8,797 Class Members and approximately 1,264 members of the Collective. Approximately 490 members of the Collective are also Class Members.

As shown below, preliminary approval of the Settlement of the Ohio Wage law claims of the Class is warranted as it meets all of the requirements of Fed. R. Civ. P. 23(e), except that notice has not yet been provided to Class Members by which they will be informed of an opportunity to be heard regarding the Class Settlement. It also meets the requirements for conditional approval of the FLSA claims of the Collective as it is fair, reasonable and adequate, resolves a *bona fide* dispute, and is the result of arms' length negotiations, subject only to the right of Collective Members to be heard regarding the Collective Settlement.

If the Settlement is preliminarily approved by the Court, Class and Collective Members will receive the required notice of the Settlement reached in this matter containing, among other pertinent information, the nature of the action; the definition of the class for which Plaintiffs seek preliminary certification for settlement purposes only; a summary of the claims, issues, and defenses; information regarding attorney's fees; notice that Class or Collective Members may enter an appearance through an attorney if they so desire; notice to Class Members that the Court will exclude from the class any member who requests exclusion who is not also a member of the Collective; identification of the time and manner for requesting exclusion; the right of any Class and/or Collective Member to object, and an explanation of the binding effect of a class judgment on Class members under Rule 23(c)(3). (*See* Ex. B, Proposed Notice.) Furthermore, Class and Collective Members will receive a tailored notice that sets forth, for each recipient Class and/or Collective Member, their estimated individual settlement payment amount (*see* Manual for

2

Complex Litigation § 21.312, noting that a class notice should provide information that will enable the Class Members to calculate individual recoveries), and prominently displays the address and telephone number of Plaintiffs' Counsel and the Administrator and the procedure for making inquiries. (*Id.*) By the notice, each Class Member, who is not also a Collective Member, will be given the choice to participate and object, or not to participate, including the right to preserve any individual claims or rights they may have against Defendant. (*Id.*)

The case was hotly contested and settlement was achieved only through two difficult negotiations, the first of which was before this Court and failed, and the second of which required the expertise of an experienced mediator in employment related actions to reach the Settlement described herein.

The following settlement documents and proposed order are submitted for approval or entry by the Court:

| | |
|---|---|
| Exhibit A: | Class and Collective Action Settlement Agreement ("Settlement Agreement"); |
| Exhibit B: | Proposed Notice of Class and Collective Action Settlement; |
| Exhibit C: | Proposed Order Granting Preliminary Approval of Settlement ("Preliminary Approval Order," providing for notice and final approval hearing); |
| Exhibit D: | Declaration of Plaintiffs' Counsel (hereinafter, proposed "Class Counsel"); and |

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed settlement payments and distributions, and the propriety of preliminary approval.

## II.    THE LITIGATION

### A.    The Claims and Issues

The first of the Actions was commenced by Plaintiff Michael Albert on February 15, 2022, against Defendant Honda Development & Manufacturing of America, LLC (Original Compl., ECF No. 1.). Plaintiff Albert filed his First Amended Class and Collective Action Complaint on April 18, 2022. (ECF No. 13, the "FAC."). As with the Original Complaint, the FAC seeks to recover for damages resulting from a cyber-attack on Defendant's nationwide payroll system provider, UKG ("Kronos"), whose timekeeping system Defendant widely utilized. During the period the Kronos system was unavailable (December 1, 2021 to February 28, 2022) (the "Kronos Outage"), Plaintiff Albert alleges that Class and Collective Members were not paid all overtime compensation they had earned in the amount of one and one-half times the employee's regular rate of pay for all hours worked over 40 in a week on the regular pay date following for the period in which such overtime hours were worked. As a result, Plaintiff Albert sought all overtime payments due pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq.,* and pursuant to Ohio law, including Ohio overtime compensation statute, O.R.C. § 4111.03, Ohio's Prompt Pay Act, § 4113.15, Ohio's statute regarding Civil Violations for a Criminal Acts, § 2307.60. (FAC, ¶¶ 61 - 73.) Plaintiff Albert's Complaint also alleged that he and other similarly situated employees of Defendant were willfully not paid at "one and one-half times" the employees' "regular rate[s]" in violation of federal and Ohio state law, and are therefore owed liquidated damages, attorneys' fees, and costs pursuant to the FLSA, 29 U.S.C. § 207, and Ohio law. (FAC, ¶¶ 67, 73.) Defendant has denied these claims and has asserted affirmative defenses. (*See generally* ECF No. 21, Def's. Answer to FAC.)

4

On January 30, 2023, this Court consolidated Plaintiff Albert's action with three similar, related-cases: *Tripoli v. Honda Development & Manufacturing of Am*., LLC, 2:22-cv-03828 (S.D. Ind.), *Whatley v. Honda Development & Manufacturing of Am*., LLC; 2:22-cv-04372 (N.D. Ala.), and *Scarbrough v. Honda Development & Manufacturing of Am., LLC*, 2:22-cv-04277 (S.D. Ohio) (ECF No. 58).

### B.    Conditional Collective Certification

Plaintiff Albert moved, on an emergency basis, for notice and conditional certification of the Collective on May 4, 2022. (ECF No. 27). After extensive briefing, this Court granted in substance that motion by Order dated September 30, 2024 (ECF No. 106) and a subsequently approved notice (ECF No. 110) was disseminated to the potential members of the Collective. Including the four Plaintiffs, there are approximately 1,264 members of the Collective.

### C.    Summary Judgment

On August 22, 2022, Honda moved for summary judgment, to which motion Plaintiff Albert filed a motion for discovery pursuant to Fed. R. Civ. Pro. 56(d). (ECF Nos. 37, 39). That motion was withdrawn as moot but reactivated on July 5, 2023. (*See* ECF Nos. 67, 68.) After extensive briefing, by Order and Opinion dated July 24, 2025, this Court denied Honda's motion for summary judgment as to Plaintiff Albert's claim that his overtime payments were unreasonably delayed in violation of the FLSA and Ohio Wage laws, but did not decide Plaintiff Albert's claim for back pay and for liquidated damages, and held in abeyance Plaintiff's claim under Ohio Revised Code § 2307.60, which provides civil recovery for criminal acts. (*See* ECF No. 165).

### D. Investigation, Discovery,[2] Document Analysis, and Research

Although the Parties agreed to a modified case management order that requested the Court to bifurcate the trial into two phases – liability and damages – and further staggered discovery related to each phase (ECF No. 158 at ¶¶ 5-7), the discovery taken was fulsome and multi-faceted. Honda's responses to discovery in the Actions, information obtained from various opt-ins and the declaration and testimony of Plaintiffs' expert, Vicky Lambert, provided sufficient information to assess the merits of Plaintiffs' claims and of Defendant's defenses. *See* Declaration of Seth R. Lesser (Class Counsel) in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement and Preliminary Certification of the Proposed Class ("Lesser Dec.") (attached hereto as Exhibit D) at ¶ 2. Defendant also provided spreadsheets containing extensive data as to Defendant's failures to pay overtime as required by the FLSA and Ohio Wage laws and as to Defendant's after-the-fact reconciliation calculations. *Id.* This information allowed Class Counsel to assess the magnitude of Defendant's exposure to Plaintiffs' claims. *Id.*

### E. Class Certification

On March 19, 2025, Plaintiff Albert moved to certify the Class (ECF No. 143), which was not decided before the Parties reached the proposed Settlement.

### F. Trial

By Order dated July 7, 2025, this Court set the Actions for trial commencing on February 23, 2026, and also set a schedule for all pre-trial related filings. (ECF No. 159).

---

[2] Further information regarding "The Amount of Discovery Engaged in by the Parties" is provided in Section IV(A) below.

### G. Settlement Negotiations

1. Settlement negotiations were arduous and contentious. *See* Lesser Dec. at ¶ 3. This Court held a many-hours long Settlement Conference on July 21, 2025, but that Conference did not produce a settlement. *Id.* Subsequently, with pre-trial related deadlines looming and not to impose yet further on the Court's time, the Parties agreed to make a second effort to reach a settlement by engaging Hunter R. Hughes – a seasoned private mediator highly experienced in resolving employment related litigation – to assist the parties in reaching a settlement. *Id.* That mediation took place on October 27, 2025, which led to an agreement in principle to settle the Actions. *Id.* These were truly arm's length negotiations. *Id.* Even after the agreement in principle was reached, and further demonstrating the arm's length nature of the proposed Settlement now before the Court, the negotiations necessary to reaching a final Settlement Agreement were extended, detailed, and themselves spirited. *Id.* at ¶4. In the end, the Parties negotiated formal settlement documents for filing with the Court, including the Class and Collective Action Settlement Agreement (Ex. A), proposed Notice of Class and Collective Action Settlement (Ex. B), and proposed Preliminary Approval Order (Ex. C). *Id.* at ¶5.

### III. THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A. The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve highly disputed claims concerning Honda's failure to pay of Collective and Class Members the overtime they earned due to the Kronos Outage. The Settlement will resolve the federal wage-and-hour claims of the Plaintiffs and members of the Collective under the FLSA, 29 U.S.C. § 216(b) and Ohio wage-and-hour claims of the Plaintiff Albert and all other members of the proposed Class pursuant to Fed. R. Civ. P. 23(e), both as alleged in the Actions. *See* Ex. A, VI(A) (if approved, the proposed

7

Class Members would "release and forever discharge Defendant Releasees from any and all claims under the FLSA or Ohio wage law related to the Kronos Outage during the period of December 1, 2021 to February 28, 2022, that were or could have been asserted in the Actions.").

As highlighted below, Class Counsel and Defense Counsel believe that the Settlement warrants preliminary approval because the released claims are being compromised without need to establish at trial the elements of those claims on which liability turns, in addition to providing an reasonable recovery to Class and Collective Members in light of the risks of no recovery due to Defendant's defenses. Plaintiffs and Class Counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. Plaintiffs and Class Counsel, however, also recognize the risk and expense of going to trial on claims principally seeking liquidated damages, which require proof of willfulness, where those claims are predicated on a cyber-attack on a vendor of the Defendant (not the Defendant itself) and where the Defendant maintains that it ultimately paid its employees all overtime amounts in arrears plus a 10% inconvenience payment and, if necessary, having to prevail on Honda's certain appeal of a trial verdict in favor of the Collective and Class.

### B. The Proposed Settlement Payments and Distributions

**Maximum Gross Settlement Amount.** Defendants have agreed to pay the maximum gross settlement amount of $2,300,000.00 as set forth in the Settlement Agreement. (Ex. A at IV (A).) That sum will be used to make settlement payments to Plaintiffs and to the members of the Class and Collective, Court-approved attorneys' fees and costs (inclusive of all expenses and fees incurred through the conclusion of the settlement administration process), Court approved Service Awards and any other costs, expenses or fees related to the Actions or Settlement. The balance of the Maximum Gross Settlement Amount remaining after payment of Court-approved

attorneys' fees and costs, Service Awards, and any other costs, expenses or fees related to the Actions or Settlement is referred to as the "Net Settlement Amount."

**Payments to Plaintiffs and Collective and Class Members.** Class and Collective Member settlement payments will be calculated by dividing the Net Settlement Amount by the sum of the number of Class and Collective Action Members to determine the value of a single Settlement Share. Each Class Member shall receive a single Settlement Share. Each Collective Action Member shall receive a single Settlement Share. Class Members who are both a Class and Collective Action Member shall receive two Settlement Shares. (Ex. A, IV(B)). The Settlement proposal therefore treats Class and Collective Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Each Plaintiff will also receive one or two Settlement Shares, depending on whether they are only a member of the Collective or both the Collective and the Class. Importantly, this is not a "claims-made" settlement. All Collective Members and all Class Members who are not Collective Members who may but do not exclude themselves from the settlement will receive a settlement check. Further, to the extent any Class Member excludes themselves from the Settlement, their calculated Settlement Share will be allocated on a pro rata basis to Collective Members and Class Members who did not request exclusion. (Ex. A, IV(A).)

**Attorneys' Fees and Cost Reimbursements.** Pursuant to the Agreement, Class Counsel may seek an award of up to 40%[3] of the Maximum Gross Settlement Amount plus Plaintiffs' expenses. (*See* Ex. A at V.) Plaintiffs will justify these award requests by motion for an award of

---

[3] As will be comprehensively detailed in Plaintiffs' Motion for Final Approval, the requested fee represents a very substantial negative multiplier and discount from the actual fees Counsel have incurred in prosecuting this action, as outlined in correspondence before the Court during mediation proceedings.

attorneys' fees and expenses, which will be made at the same time they move for final approval of the Settlement.

**Service Awards.** Concurrently, Class Counsel will also move the Court to approve Service Awards to the Plaintiffs in the following amounts: Michael Albert - $10,000; Trevor Tripoli - $5,000; Brandon Whatley - $5,000; and Melissa Scarbrough - $5,000, to be paid out of the Maximum Gross Settlement Amount. In addition to compensating the Plaintiffs for serving as Plaintiffs and, in the case of Michael Albert, Class Representative (if so appointed by the Court), in the Actions, these Service Awards constitute consideration to them for their general release of claims. (*See* Ex. A, VI(B).).

**Costs of Administration.** The Settlement Expenses incurred by the Settlement Administrator to process the initial mailing of the Notice and the setting up of a Settlement website will be promptly paid by Defendant as billed by the Settlement Administrator regardless of whether the Settlement is ultimately approved. Such amount will be a credit on the amount of the Maximum Gross Settlement Amount. The remaining Settlement Expenses of the Settlement Administrator will be paid solely from the Maximum Gross Settlement Amount, subject to approval by the Court. The Settlement Administrator shall determine the total amount of such fees and expenses before calculating the amount of the settlement payments to be made to the Class and/or Collective Members and mailing the Notice of Settlement. (*See* Ex. A at IV(F)(3)).

## IV. THE PROPRIETY OF PRELIMINARY APPROVAL OF THE SETTLEMENT

### A. The Proposed Settlement Qualifies for Conditional Court Approval under the FLSA, 29 U.S.C. § 216(b)

As to Plaintiffs and the other members of the Collective, this Settlement qualifies for conditional Court approval under the FLSA, 29 U.S.C. § 216(b), subject only to the right afforded by the Settlement for any member of the Collective to object to the Settlement. (*See* Ex.

A, III(E)(4).) To approve an FLSA settlement, the Court should determine that the compromise is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Yorba v. Barrington School, LLC*, S.D. Ohio No. 2:21-cv-691, 2022 U.S. Dist. LEXIS 118230, at *7 (July 5, 2022) (citing *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008), quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute"), citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8, 90 L. Ed. 1114 (1946)); *Zego v. Meridian-Henderson*, S.D. Ohio No. 2:15-CV-3098, 2016 U.S. Dist. LEXIS 132320, at *3 (Sep. 27, 2016) (quoting *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012)).

In *Yorba*, this Court used seven factors to evaluate whether the proposed settlement was "fair, reasonable and adequate" for purposes of the FLSA, 29 U.S.C. 216(b). *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *7-13; *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19-20; *see also Crawford v. Lexington-Fayette Urban Cty. Govt.*, E.D. Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13-14 (Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992) (additional citation omitted)). The factors this Court in *Yorba* considered were:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Yorba*, 2022 U.S. Dist. LEXIS 118230, at *7-12 (citing *UAW*, 497 F.3d at 631). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Gentrup v. Renovo Servs., LLC,* S.D.

Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *8 (June 24, 2011) (citing *Redington v. Goodyear Tire & Rubber Co.,* 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461 at *11 (N.D. Ohio Aug. 23, 2008), citing *Granada,* 962 F.2d at 1205-06)).

<u>The Risk of Fraud or Collusion</u>

There is no risk of fraud or collusion here. This Court has witnessed first-hand the adversary nature of the Parties which has been evident in the disputes as to summary judgment and collective certification this Court was required to resolve, as well as during the settlement conference this Court held. Further, it required the significant efforts of a highly experienced mediator before this Settlement could be reached.

<u>The Complexity, Expense and Likely Duration of the Litigation</u>

Wage-and-hour cases are always expensive and time-consuming and the expense and likely duration of continued litigation strongly favor approval. Here, the adequacy of Defendant's reconciliation efforts has already proven to be a complex matter that may require analysis by a costly expert. Moreover, the issue of whether Honda should have been prepared for a failure of the Kronos payroll system it was using has also already been shown to involve competing expert witnesses – Vicky Lambert for Plaintiffs and Lisa Disselkamp for Honda. Expert Reports and deposition and trial testimony as to this central issue in the Actions will also be expensive. Further, while the Phase I trial on liability is scheduled by the Court to commence on February 23, 2026, a verdict in that trial would not result in a final judgment. Instead, a plaintiff verdict would merely lead to a second, Phase II trial on damages. Consequently, a final resolution would be distant, and even then, whomever lost would undoubtedly appeal, placing any potential recovery from continued litigation well into 2027 or beyond. The outcome of continuing to litigate the case through two separate trials would be uncertain, and the risks of

continued litigation would be high. In contrast, the Settlement assures that Plaintiffs and the other members of the Collective will receive compensation for the federal law wage claims asserted in the Actions much sooner.

<u>The Amount of Discovery Engaged in by the Parties</u>

The Parties have engaged in substantial investigation and adversarial discovery, providing Class Counsel with sufficient information to evaluate the strengths and weaknesses of the claims and the adequacy of the Settlement. The Settlement was reached only after a fully developed record was established through aggressive motion practice, expert analysis, and testimonial discovery.

The Parties engaged in extensive motion practice that crystallized the legal risks of the case. Defendant moved for summary judgment early in the litigation (ECF No. 37), a motion that was later reactivated (ECF No. 67) and fully briefed by both sides. This process required a thorough factual and legal investigation into the core issue of the case. The Court's July 24, 2025, Opinion and Order denying, in part, summary judgment (ECF No. 165) settled the threshold legal questions and provided a concrete framework upon which to base settlement negotiations.

Class Counsel engaged in targeted and comprehensive discovery to build the evidentiary record. This included comprehensive discovery requests served by Class Counsel early in the litigation. In response, Defendant produced substantial data, including a production of more than 40,000 documents in December 2022, February 2023, and June 2023, including but not limited to regarding its timekeeping systems, the details of the Kronos outage, and payroll reconciliation data (*see* ECF No. 70).

In addition, Class Counsel noticed and took the depositions of Defendant's corporate designees pursuant to Fed. R. Civ. P. 30(b)(6) to investigate the reconciliation process and the scope and effects of the outage. These deponents included Tanya Alloway (ECF No. 73-1), Linda

Bailey (ECF No. 74-1), Mike Uttam (ECF No. 86-1), and Tami Riley (ECF No. 82-3). Class Counsel also retained a payroll and timekeeping expert, Vicki Lambert, to analyze Defendant's payroll practices and disaster recovery planning. Her expert report was served, and she was deposed by Defendant on October 17, 2023 (ECF No. 94-1).

Class Counsel further conducted in-depth interviews with numerous potential and current Opt-In Plaintiffs to verify the hours worked and the impact of the outage on affected employees. This extensive investigation yielded detailed declarations from employees, which were filed with the Court in support of the motions for notice (see ECF Nos. 27, 75). These declarations provided critical evidentiary support, detailing not only the specific hours worked and unpaid, but also the profound financial and emotional distress suffered by the workforce, thereby establishing the commonality of the alleged harm.

Finally, the Parties possessed sufficient information to value the claims accurately. Although the Parties agreed to a modified case management order, approved by the Court, that requested to bifurcate the trial into two phases – liability and damages – and further staggered discovery related to each phase (ECF No. 158), Class Counsel had already obtained and analyzed sufficient data regarding the reconciliation payments and hours worked to formulate a precise damages model. Following the Court's partial denial of summary judgment in July 2025 (ECF No. 165), the Parties exchanged detailed settlement correspondence and engaged in additional months of arm's-length negotiations. These discussions bridged the gap between their respective valuations of the claims, culminating in the agreement reached in December 2025 (*see* ECF No. 171). Consequently, the Parties entered into this Settlement with a comprehensive understanding of the liability risks and the potential recovery available at trial.

<u>The Likelihood of Success on The Merits</u>

The likelihood of success on the merits is typically balanced against the amount and form of the settlement. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at \*20. Here, that balancing strongly supports conditional approval. Specifically, with regard to the likelihood of success as to liability, Plaintiffs of course faced the risk that they might lose at trial and recover nothing; alternatively, Plaintiffs might only succeed in obtaining a partial verdict at trial, and therefore, in either case, ultimately recover less for the Collective than what they have obtained from the Settlement. In ongoing litigation, and ultimately at trial, Honda would have offered a number of potential defenses, arguing, *inter alia*, that the Kronos time outage was an unprecedented event, that Honda responded reasonably in the aftermath of the outage, that Honda took steps on their own to ensure that any impacted employees were fully compensated for any payment failures that occurred, and that, in fact, all employees were compensated. Plaintiffs would have challenged each such contention, but there is no guarantee that they would have been successful in doing so.

Meanwhile, regarding damages, while the complex analysis required for calculating damages following *the second* trial would not be vastly different than the undertaking required for calculating damages for purposes of this Settlement, the risk nevertheless remains that the actual damages would be less following trial. Plaintiffs maintain that liquidated damages are warranted because Honda was woefully ill-prepared for a failure in its Kronos payroll system due to any event, which led to Honda's inability to initially pay its employees accurately and timely and therefore did not act in good faith. But, if Honda were successfully able to demonstrate to a jury that it did act in good faith and without willfulness, the recoverable damages in the Actions would be significantly lower, as much of the damages claimed in the Actions are attributable to the

15

liquidated damages Plaintiffs claim Defendant owes for not timely and accurately paying Collective Members during the Kronos Outage.

These factors, on balance, therefore, favor approval.

The Opinions of Class Counsel

The endorsement of the Parties and their counsel weighs in favor of approval. Class Counsel, who have extensive experience litigating FLSA claims, believe that the Settlement is fair, reasonable, and in the best interest of the Collective Members. *See* Lesser Dec. at ¶ 6.

The Public Interest

The certainty and finality of a settlement that will substantially benefit the Collective Members is also in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available for the FLSA claims of the Plaintiffs and other Collective Members.

Thus, this Court can conclude at this time that all the relevant factors, except for the reaction of the members of the Collective factor, are satisfied. There is categorically no fraud or collusion. The settlement was achieved only after the Parties engaged in significant discovery, substantial document review, comprehensive data analysis, and other due diligence prior to arduous negotiations, and the strengths and weaknesses of Plaintiffs' claims were well understood. The Settlement was also the product of good faith and arm's-length negotiations between parties represented by competent counsel and was reached with the assistance of an experienced independent mediator. *See Sharier v. Top of the Viaduct, LLC*, N.D. Ohio No. 5:16-

cv-343, 2017 U.S. Dist. LEXIS 35584, at *5 (Mar. 13, 2017); *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *8. Counsel on both sides support the Settlement, as do the Plaintiffs themselves. (*See* Plaintiff signatures to Ex. A.) In sum, each of the factors that can be evaluated now support a finding that the FLSA portion of the Settlement is "a fair and reasonable resolution of a bona fide dispute." *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *7.

**B.**    **The Proposed Settlement Qualifies for Preliminary Approval under Rule 23**

"Class actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile." *Lonardo v. Travelers Indemnity Co*., 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010). Fed. R. Civ. P. 23 requires a two-fold determination for preliminary approval of the class action. Rule 23 authorizes the Court to certify a class if it satisfies the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequate representation – and "meet[s] at least one of the three requirements listed in Rule 23(b)." *Glazer v. Whirlpool Corp*., 678 F.3d 409, 416 (6th Cir. 2012). Rule 23(e) provides that the Court may approve the class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate…" *See, e.g., Jackson v. Trubridge,* 2017 U.S. Dist. LEXIS 193782, at *4, 6 (N.D. Ohio Jan. 26, 2017) (granting preliminary approval of settlement that was "'fair, reasonable, and adequate' to all participants").

Rule 23(e), effective December 1, 2018, explicitly addresses preliminary approval. The Rule now provides:

> **(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with

the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) *Notice to the Class.*

(A) *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

(B) *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

As above, the Court must address two questions at the preliminary approval stage: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)"; and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." *Id.* Courts have treated the amended standard as superseding the varying "preliminary approval" standards that courts had developed based on decisional law. *See Fitzgerald v. P.L. Marketing,* W.D.Tenn. No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 117220, at *12, n. 1 (July 2, 2020) ("Rule 23(e) was substantially amended to provide an enumerated 'shorter list of core concerns' for courts to focus on when evaluating whether a proposed class action settlement is fair.") (citing *see* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes); *Noll v. Flowers Foods Inc.,* No. 1:15-cv-00493-LEW, 2022 U.S. Dist. LEXIS 75349, at *16-17 (D. Me. Apr. 26, 2022); *Busby v. Bonner,* W.D.Tenn. No. 2:20-cv-2359-SHL-atc, 2021 U.S. Dist. LEXIS 173421, at *8 (Jan. 28, 2021); *Herrera v. Wells Fargo Bank, N.A.,* No. SACV 18-332JVS(MRWx), 2021 U.S. Dist. LEXIS 170195, at *21 (C.D. Cal. June 8, 2021); *Padovano v. FedEx Ground Package Systems*, 2019 U.S. Dist. LEXIS 107092, *6-7 (W.D.N.Y. June 10, 2019); *In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, *14-16 (N.D. Cal. Mar. 29,

2019); *Swinton v. SquareTrade, Inc*., 2019 U.S. Dist. LEXIS 25458, *13-15 (S.D. Iowa Feb. 14, 2019). The proposed Settlement satisfies the above prerequisites and standards, as shown below.

### 1.    Preliminary Approval of the Proposal Under Civil Rule 23(e)(2)

When evaluating whether the Court *will likely be able to* "approve the proposal under Rule 23(e)(2)," the court applies amended Rule 23(e)(2)'s approval factors. Rule 23(e) states:

> (2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A) the class representatives and class counsel have adequately represented the class;
>>
>> (B) the proposal was negotiated at arm's length;
>>
>> (C) the relief provided for the class is adequate, taking into account:
>>
>>> (i) the costs, risks, and delay of trial and appeal;
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D) the proposal treats class members equitably relative to each other.

These factors are addressed in turn.

### a.    Adequacy of Representation by Class Counsel and Plaintiff Albert – Rule 23(e)(2)(A)

Plaintiff Albert (proposed Class Representative) has aggressively pursued the interests of Class Members in this case, and proposed Class Counsel have extensive experience in class action litigation including wage-and-hour cases. *See Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 543 (6th Cir. 2012) (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel") (quoting *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1083 (6th Cir.

1996) (citation omitted)). Plaintiff Albert and Class Counsel have adequately represented the Class, including but not limited to by engaging in a forthright affirmative amount of motion practice, taking substantial discovery and doing comprehensive data analysis, opposing Defendant's motion for summary judgment, moving for FLSA notice at the outset of the litigation, and generally engaging in due diligence prior to the lengthy and full Settlement negotiations, and believe it fair to say that we have achieved a significant result for Class Members. *See* Lesser Dec. at ¶ 7. Specifically, the Settlement provides Class and Collective Members with approximately 27% of their maximum damages. *See* Lesser Dec. at ¶ 8. The benefit provided by the Settlement to members of the Class are therefore "well above the 7 % to 11 % average result achieved for class members." *Dillworth v. Case Farms Processing, Inc.,* N.D. Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *19-20 (Mar. 8, 2010) (citing *see* Dunbar, Foster, Juenja, & Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995).

### b. Arm's Length Negotiation – Rule 23(e)(2)(B)

Advisory Committee Notes provide that this factor considers whether negotiations "were conducted in a manner that would protect and further the class interests." The settlement here was reached as a result of arm's length negotiation by competent counsel with the assistance of a seasoned mediator. Class Counsel engaged in extensive investigations into the facts before and during the prosecution of the Actions, multiple conferences with the Defendant's Counsel, analysis of wage-and-hour information and other data and documents and development of a data analysis and methodology from the records produced by Defendant. The Parties were represented by law firms with extensive litigation and wage and hour experience. Class Counsel certifies that the Settlement Agreement resulting from these negotiations was reached at arm's

20

length and is one that is fair and reasonable to Class Members. This factor is therefore likely to be satisfied.

### c. The Relief is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal – Rule 23(e)(2)(C)(i)

Advisory Committee Notes provide that "[a]nother central concern will relate to the cost and risk involved in pursuing a litigated outcome." Here, courts often consider "the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.*

This factor is also likely to be satisfied. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to Plaintiff Albert and all other Class Members in the relatively short term. There is no guarantee that Plaintiff Albert and Class Members will prevail at trial or, if they prevail at trial, on appeal, and the litigation could be long, immensely costly, and protracted. In fact, at trial, the maximum Plaintiff Albert and Class and Collective members would ask the Court to award is $8,494,364.78. As outlined below, the average approximate of these damages obtained by the Settlement for the benefit of Plaintiff Albert and Class Members, is at the high end of percentages approved by many courts. *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-20 (citation *supra*) (The allocations provided to members of the class are "well above the 7 % to 11 % average result achieved for class members."). Further, this recovery has been obtained potentially years earlier than any potential recovery through continued litigation, which may have resulted in no recovery at all.

### d. The Relief is Adequate, Taking into Account the Effectiveness of the Proposed Method of Distribution – Rule 23(e)(2)(C)(ii)

Here, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. This factor is likely to be satisfied because Class Members are required to do nothing to participate in the settlement; there is no requirement that they submit any claim forms or other documents to share in the recovery (provided they do not opt-out) so there is no risk that illegitimate claims will be submitted. The identity of Class Members will be determined solely from Defendant's records.

### e. The Relief is Adequate, Taking into Account the Terms of the Proposed Award of Attorney's Fees – Rule 23(e)(2)(C)(iii)

As to this factor, Advisory Committee Notes provide that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." As provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel will not be paid to them until after the final approval order is issued by the Court. (*See* Ex. A at Section V). Furthermore, as a condition of the Agreement, Honda agreed it would not seek clawback[4] of all amounts overpaid, which would have been up to tens of millions of dollars, a substantial value to all Class Members even if not a settlement proceed that they will receive. After reductions for the attorneys' fees, litigation expenses[5], and Service Awards Class Counsel expect to request, if

---

[4] *See* Ex. A at Section VIII (providing, specifically, "Defendant acknowledges that it has asserted that certain funds paid to Plaintiffs… As a material condition of this Agreement, Defendant agrees to waive, release, and forever discharge any right to recover, claw back, offset, or seek restitution for said Alleged Overpayments. Defendant agrees that Plaintiffs, Class Members and Collective Members shall retain all such funds free and clear of any claim by Defendant, regardless of whether such payments were made in error or in excess of amounts actually owed." *See also, e.g.,* ECF No. 37-1, L. Bailey Decl. ¶ 28 ("The reconciliation process revealed that during the Kronos Outage, HDMA overpaid associates a total of $28,559,443…").

[5] The total expenses incurred, to date, have been $91,077.16, to which Plaintiffs would

22

approved by the Court, the total amount that will be available for distribution for the benefit of

Class Members, who represent 87% of the Settlement Shares to be calculated as set forth in Ex.

A, IV(B), will be approximately $1,042,668.76 (which is approximately 87% of the

$1,198,469.84 Net Class/Collective Distribution). *See* Lesser Dec. at ¶ 9. This amount, which is

approximately 13.72% of Class Member damages under the Plaintiff's core Ohio prompt-pay act

claim, is also a percentage worthy of approval. *Id.*

Pursuant to the Settlement Agreement, Class Counsel may seek an attorneys' fee award

up to 40% of the Maximum Gross Settlement Amount. (Ex. A, V). Awarding an attorney fee

based on a percentage of the benefit obtained is well-established within this District. *See Swigart*

*v. Fifth Third Bank*, S.D. Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *14-15 (July

11, 2014) (citing *Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08–CV–1119, 2011 WL

292008, at *13 (S.D. Ohio Jan.26, 2011) ("In this district, 'the preferred method is to award a

reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.'"));

*Lonardo*, 706 F. Supp. 2d at 790 (percentage-of-fund is the "preferred method"). Another court

noted that "[t]he percentage of the common fund method has the advantage of establishing

reasonable expectations on the part of class counsel 'as to their expected recovery,' and

encourag[es] early settlement before substantial fees and expenses have accumulated."

*Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-21 (citing *Rawlings v. Prudential-Bache*

*Properties*, 9 F.3d 513, 516 (6th Cir.1993) (further citation omitted)).

---

respectfully believe another $1,500 can reasonably be anticipated to be spent in preparing for and
attending the final approval hearing and in expenses relative to corresponding with settlement
class members, for a total of $92,577.16, which is the amount, rounded to $92,600 we would be
including in the notices that Class Counsel would be seeking for costs and expenses. Lesser Dec.
at ¶ 10.

At the final approval stage, after additional substantial additional work to be completed by Class Counsel, Plaintiffs will fully brief the fairness and reasonableness of the requested attorneys' fees under the applicable standards. In the meantime, Plaintiffs note that fee awards ranging from 20 to 50 percent of the common fund are frequently approved, *In re Broadwing,* 252 F.R.D. at 380 (citing *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001); *In re Telectronics*, 137 F. Supp. 2d at 1046 ("the range of reasonableness [] has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), rev'd on other grounds, 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"); citing *see Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 503 (E.D. Mich. 2000) (1/3); In re Cincinnati Gas & Elec., 643 F. Supp. 148, 150 (S.D. Ohio 1986); *In re Cincinnati Microwave, Inc. Securities. Litigation,* No. C-I-95-905 (S.D. Ohio Mar. 21, 1997) (30% plus expenses); *Howes v. Atkins,* 668 F. Supp. 1021 (E.D. Ky. 1987) (40%); *Adams v. Standard Knitting Mills, Inc.,* [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 96,377, 1978 U.S. Dist. LEXIS 20317 (E.D. Tenn. Jan. 6, 1978) (35.8%)), including in wage and hour litigation, *Coleman v. Amazon.com, Inc.,* No. 2:21-cv-02200-SHM-atc, 2025 U.S. Dist. LEXIS 215075, at *12 (W.D. Tenn. Oct. 31, 2025) ("Awarding attorneys' fees of 38% is well within the acceptable range and consistent with precedent in this Circuit"); *Salinas v. United States Xpress Enters., Inc.,* No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *21, 2018 WL 1477127, at *9 (E.D. Tenn. Mar. 8, 2018) ("Plaintiffs' counsel is seeking $880,000 in fees, which constitutes 40% of the fund and 61% of its lodestar, representing a concession of more than half a million dollars from the lodestar"), *report and recommendation adopted*, No. 1:13-CV-245, 2018 U.S. Dist. LEXIS 48946, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018) (internal citations omitted);

*Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 U.S. Dist. LEXIS 224730, at *3 (S.D. Ohio Nov. 8, 2018) (40%).

### f. The Relief is Adequate, Taking into Account Agreements Required to be Identified under Rule 23(e)(3) – Rule 23(e)(2)(C)(iv)

Rule 23(e)(3) requires the Parties to "file a statement identifying any agreement made in connection with the proposal." Here, the Settlement Agreement (Ex. A) is the only agreement connected to this class action settlement. This factor is therefore likely to be satisfied.

### g. The Settlement Treats Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

Advisory Committee Notes comment that the amended Rule prohibits "inequitable treatment of some class members vis-a-vis others." Here, each Class Member will receive, if the Settlement is approved by the Court, the same Settlement Share every other Class Member will receive. (Ex. A, IV(B)). The settlement proposal therefore treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). This distribution method, giving each Class Member the same recovery, is eminently the most equitable proposed method of distributing relief to each member of the Class.

### 2. Approval of the Proposal under Civil Rule 23(e)(1)(B)(ii)

Now that the Parties have shown that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second consideration under Rule 23(e)(1)(B): whether the court "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Courts within the Sixth Circuit have "repeatedly found that a FLSA collective action and Rule 23 class action may be maintained in the same lawsuit." *Rapp v. Forest City Technologies, Inc.*, No. 1:20-cv-2059, 2021 U.S. Dist. LEXIS 131540, at *12 (N.D. Ohio July 15, 2021) (citing *Stephenson v. Family Sols. of Ohio, Inc.*, No. 1:18cv2019, 2021 U.S. Dist. LEXIS

65421, at *35 (N.D. Ohio Apr. 5, 2021) ("It is well-settled that employees in Ohio can maintain a Rule 23 class relating to their Ohio claims while simultaneously representing a 29 U.S.C. § 216(b) collective action relating to their FLSA claims.") (collecting cases, including *Ganci v. MBF Inspection Servs., Inc.,* 323 F.R.D. 249, 264 (S.D. Ohio 2017); *Dillow v. Home Care Network, Inc.,* 2017 U.S. Dist. LEXIS 85788, 2017 WL 2418738, at *5 (S.D. Ohio June 5, 2017); *see also Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 181, 187 (S.D. Ohio 2012).

Certification of the proposed Class, for settlement purposes, will enable the Parties to resolve the claims of Plaintiff Albert and all other Class Members. Rule 23 authorizes the Court to certify a class that satisfies the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequate representation – and "meet[s] at least one of the three requirements listed in Rule 23(b)." *Whirlpool Corp,* 678 F.3d at 416. However, as class certification is sought for settlement purposes, the manageability element of Rule 23(b) has been held not to apply. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…"). Furthermore, "courts in this Circuit have recognized that ascertainability of class members is an implied prerequisite of Rule 23." *Steigerwald v. BHH, LLC*, 2016 U.S. Dist. LEXIS 21116, *8 (N.D. Ohio Feb. 22, 2016) (citations omitted).

**Numerosity.** The class consists of approximately 8,797 employees of Defendant in Ohio at the time of the Kronos Outage. Rule 23(a)(1) requires a showing that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Sixth Circuit has held that there is "no strict numerical test" to establish numerosity. *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014) (citing *Young*, 693 F.3d at 541). A class of

35 employees, for example, has been found sufficient. *Afro American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974); *see also Dorsey v. Aviva Metals, Inc.,* No. 1:20-cv-02014, 2022 U.S. Dist. LEXIS 176562, at *22 (N.D. Ohio Sep. 28, 2022) ("40 or more members raises a presumption of impracticability") (quoting *Zehentbauer Fam. Land LP v. Chesapeake Expl., L.L.C.,* No. 4:15-cv-2449, 2018 U.S. Dist. LEXIS 121728, 2018 WL 3496089, at *3 (N.D. Ohio July 20, 2018), aff'd, 935 F.3d 496 (6th Cir. 2019)); *Snelling v. ATC Healthcare Servs. Inc.,* No. 2:11-CV-00983, 2012 U.S. Dist. LEXIS 172052, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) ("40 or more members is sufficient"). Rather, a plaintiff must only show that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Joinder of the 8,797 Class Members is not only impractical because of their number, but also because, as S.D. Ohio Courts have noted, in FLSA / state law Fed. R. Civ. P. 23 cases as here:

> [L]itigating against one's employer is an inherently fraught proposition that may discourage class members from either opting in to an FLSA collective action or asserting their state law wage and hour claims on an individual basis. Thus, even when class member identities are easily determined from employee rosters, joinder is often nevertheless impracticable.

*Ganci*, 323 F.R.D. at 256 (citing, e.g., *Castillo*, 302 F.R.D. at 487 ("the non-trivial fear of reprisal and posture of economic dependency … would likely repress the willingness of the class members to bring suit individually")). In other words, "a class member's potential fear of retaliation is an important consideration in deciding whether joinder is impracticable and thus whether the numerosity requirement is satisfied." *Swigart*, 288 F.R.D. at 183. *See also Myers v. Marietta Mem'l Hosp.*, No. 2:15–CV–2956, 2017 WL 3977956, at *3 (S.D. Ohio Sept. 11, 2017) (joinder was impracticable due to retaliation concerns).

Thus, numerosity is met here as "joinder of all members is impracticable." Rule 23(a).

**Commonality.** The "commonality" requirement of Rule 23(a)(2) is satisfied where "there

are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see Dillow*, 2017 U.S. Dist. LEXIS 85788, at *7 (June 5, 2017). This requirement "focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit…" *Arlington Video Prods. v.Fifth Third Bancorp*, 515 F.App'x 426, 441 (6th Cir.2013). Class members must "have suffered the same injury," and "[t]heir claims must depend upon a common contention ... that [] is capable of classwide resolution." *In re Whirlpool*, 722 F.3d at 852 (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 338, 131 S. Ct. 2541, 2545 (2011)). While Class members' claims must be common, they need not be identical – the "requirement is met where questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Swigart*, 288 F.R.D. at 183 (quoting *Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332, 338 (D. Minn. 1999)).

Here, there are questions of law or fact common to the Class, including (i) whether Defendant's conduct following the Kronos Outage violates Ohio law governing payment of statutory compensation; (ii) whether Defendant denied employees statutory compensation where, among other things, employees were not paid wages for their overtime hours worked following the Kronos Outage; and (iii) what amount of monetary relief will compensate Plaintiff and other members of the Ohio Class for Defendant's violations of O.R.C. §§ 4111.03, 4113.15, 2307.60, including liquidated damages, and punitive or exemplary damages. (*See* ECF No. 13, Pl.'s Am. Compl. ¶¶ 24, 45, 56, 69, 72, 73.)

Honda has conceded that its response to the Kronos Outage was systematic and applied across the board – it is intertwined with and central to Defendant's main defense that it acted reasonably across the board. Thus, Rule 23's commonality requirement is clearly satisfied as Plaintiff Albert and Class members' claims involve "common contention[s]" that are "capable of

28

classwide resolution." *In re Whirlpool Corp.*, 722 F.3d at 852 (quotation omitted).

**Typicality.** The "typicality" requirement of Rule 23(a)(3) is satisfied where "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Typicality is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *In re Whirlpool*, 722 F.3d at 852 (citing *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir. 1998) (en banc), quoting *In re Am. Med. Sys.*, 75 F.3d at 1082)). The representatives' claims are typical if they "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members" and are "based on the same legal theory." *Arlington*, 515 F.App'x at 442 (quoting *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007)).

Typicality ensures that "the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *In re Whirlpool*, 722 F.3d at 852-53 (citing *Sprague*, 133 F.3d at 399, quoting *In re Am. Med. Sys*., 75 F.3d at 1082).

Here, Plaintiff Albert's claims "are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff Albert was deeply affected by the unlawful practices and policies at the core of this case and penalized by Honda's unlawful policies in response to the Kronos Outage just like all other Class members. (*See, e.g.,* ECF Nos. 27-1, 75-16, M. Albert Decls.) Plaintiff Albert's claims are the same as all Class members' claims and arise out of a single course of conduct – including Honda's practices and policies of failing to pay overtime wages following the Kronos Outage – and Plaintiff Albert and Class members rely on the same legal theories. *See Kopaleishvili v. Uzbek Logistics Inc*., No. 1:17-cv-702, 2019 U.S. Dist. LEXIS 209529, at *39-40 (S.D. Ohio Dec. 4, 2019). Moreover, successful litigation of Plaintiff Albert's claims will advance the interests

of all Class members. *See Arlington*, 515 F.App'x at 442. The only difference is the amount of overtime worked, the amount of unpaid overtime wages owed. Typicality is indisputably met.

**Adequacy of Representation.** Adequacy of representation is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A court "looks to two criteria for determining adequacy of representation[:]" the class representatives "must have common interests with unnamed members of the class," and "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citation omitted)).

In the present case, proposed Representative Plaintiff Albert has patiently and vigorously prosecuted this action during the three-year pendency of this litigation and will continue to do so. Proposed Representative Plaintiff's interests are inarguably aligned with the Rule 23 Class Members' interests. *See Uzbek*, 2019 U.S. Dist. LEXIS 209529, at *41 (adequacy is found where "[p]laintiff and the putative class members share the same interest … [t]he named Plaintiff suffered the same alleged injury as the proposed class members, having been paid [the same way].). In addition, Class Counsel have broad experience in wage-and-hour and class action litigation, having successfully litigated class actions on behalf of many thousands of claimants. (*See* R. Winters Decl., ECF No. 143-1 at ¶¶ 4–11; S. Lesser Decl., ECF No. 143-2 at ¶ 4; M. Parmet Decl., ECF No. 143-3 at ¶¶ 3–17; C.R. Morgan Decl., ECF No. 143-4 at ¶¶ 3–8; A. Murthy Decl., ECF No. 143-5 at ¶¶ 3–10). Here, as in *Uzbek*, at *41, "Plaintiff is represented by qualified counsel experienced in the work of class action litigation, as demonstrated by counsels' citation to numerous, prior examples of their representation." The adequacy requirement has therefore been met.

**Predominance.** Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance requirement of Rule 23(b)(3) is satisfied where "the questions of law or fact common to class members predominate over any questions affecting only individual members…" Fed. R. Civ. P. 23(b)(3). Under *Amgen*, this "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459, 133 S. Ct. 1184, 1191 (2013). Thus, "the predominance inquiry must focus on common questions that can be proved through evidence common to the class." *In re Whirlpool*, 722 F.3d at 858 (citing *Amgen*, 133 S. Ct. at 1195-96). The plaintiff "need not prove that each element of a claim can be established by classwide proof[,]" only that "common questions '*predominate* over any questions affecting only individual [class] members.'" *In re Whirlpool Corp.,* 722 F.3d at 852 (emphasis original) (quoting *Amgen* at 1196). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 564 (6th Cir.2007) (quoting *In re Visa Check/Mastermoney v. Visa*, 280 F.3d 124, 139 (2d Cir.2001)).

In the present case, both liability and damages (including the availability of liquidated/punitive/exemplary damages) issues under Ohio Wage law can be determined on a class- wide basis. The overarching liability question – whether Defendant's rules, practices, and policies following the Kronos Outage resulted in Class members not being paid wages, including overtime compensation and liquidated damages – is the exact same for all Class members.

Thus, the common issues in this case "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

**Superiority.** The "superiority" requirement of Rule 23(b)(3) is satisfied where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, a court considers (1) the interests of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a forum; and (4) the difficulties in managing the class action. *Id.*[6]

These four factors weigh heavily in favor of class certification. The present case –resulting from a single event and Honda's response to it resulting in the non-payment of overtime wages and liquidated damages – is precisely the type of case in which class litigation is the superior method of adjudication. The Sixth Circuit has noted that use of the class method is warranted particularly "[where] class members are not likely to file individual actions because the cost of litigation would dwarf any potential recovery." *In re Whirlpool*, 722 F.3d at 861 (citing *Amchem*, 521 U.S. at 617 (in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all'"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

In the present case as well, workers lack the resources to bring individual suits against Honda for its overtime violations, or "the cost of litigation would dwarf any potential recovery." *In re Whirlpool*, 678 F.3d at 421. The other factors also support class certification. First, counsel is aware of no current or pending actions related to an alleged overtime violation as a result of the Kronos Outage by Honda that are ongoing – as Judge Posner wrote in *Carnegie*, "'[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits' because of

---

[6] As noted above, manageability is not a requirement for a settlement class.

litigation costs." *Carnegie*, 376 F.3d at 661 (emphasis in original) (quoted in *In re Whirlpool*, 722 F.3d at 861). Second, all putative Class members were each affected by the Kronos Outage, and were each denied overtime compensation, making this Court the appropriate forum. The superiority requirement is therefore also met.

**Ascertainability: "**Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537-38 (internal citations omitted). Here, the identities of the members of the proposed Class are readily identifiable and ascertainable based on the wage and hour records Honda maintained, and was required to maintain, under the FLSA and Ohio law. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.6; O.R.C. §§ 4111.08, 4111.14(F). In fact, every single one of the approximately 8,797 members of the Class has previously been specifically identified by Honda – in compliance with the Court's Order Granting Notice to the Collective Members – *as having not been paid overtime compensation in the amount of one and one-half times the employee's regular rate of pay for all hours worked over forty (40) as a result of any late and/or non-overtime payment during the Kronos Outage Period.* The ascertainability requirement is therefore objectively met.

**C.    Plaintiff Albert Should be Appointed Class Representative and Class Counsel Should be Appointed Class Counsel**

In the present case, Plaintiff Albert has patiently and vigorously prosecuted this action during the more than three-year pendency of this matter, and will continue to do so. For example, Plaintiff Albert has submitted multiple declarations, information and evidence to Class Counsel (*see, e.g.,* ECF Nos. 27-1, 75-16), advised counsel as to prosecution of the action prior to and during the pendency of this matter, as well as consulted with counsel at critical stages. Plaintiff Albert has faithfully represented the interests of all putative Class members and ably assisted

33

proposed class counsel. Plaintiff Albert's interests are further aligned with the Class members' interests. *See Uzbek*, 2019 U.S. Dist. LEXIS 209529, at *41. Plaintiff Albert should be appointed Class Representative.

Fed. R. Civ. P. 23(g) further requires the Court to appoint Class Counsel. That Class Counsel – SCOTT & WINTERS LAW FIRM, LLC, KLAFTER LESSER LLP, PARMET PC, and MORGAN & MORGAN, P.A. – have zealously represented the putative Class thus far cannot be gainsaid: they moved with dispatch in commencing this action, filing scores of consents at its outset, moved to protect the putative Class Members by seeking a collective almost immediately, immediately retained an expert to address the core issues in the case and used that expert's report and their own substantial discovery efforts both to oppose Defendant's motion for summary judgment and to obtain FLSA notice (which this Court granted). No less so, Class Counsel have extensive experience litigating hybrid class/collective wage-and-hour cases and substantial knowledge of the applicable law, and have certainly demonstrated here a willingness to commit the necessary resources to prosecute the claims of the Rule 23 Class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). SCOTT & WINTERS LAW FIRM, LLC, KLAFTER LESSER LLP, PARMET PC, and MORGAN & MORGAN, P.A. are competent and experienced in class action wage-and-hour litigation. (R. Winters Decl., ECF No. 143-1 at ¶¶ 4–11; S. Lesser Decl., ECF No. 143-2 at ¶ 4; M. Parmet Decl., ECF No. 143-3 at ¶¶ 3–17; C.R. Morgan Decl., ECF No. 143-4 at ¶¶ 3–8; A. Murthy Decl., ECF No. 143-5 at ¶¶ 3–10). This experience includes prosecuting claims under the FLSA and state law, being appointed as class counsel to represent classes of employees and successfully resolving the claims of many thousands of workers. Class Counsel have met and exceed the requirement of Rule 23(g), and should be appointed Class Counsel.

34

### D.     The Proposed Notice Should Be Approved – Rule 23(c)(2)(B)

In order to protect the rights of absent members of a settlement class, the Court must provide the best notice practicable to all members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-175, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Amended Fed. R. Civ. P. 23(c)(2)(B) specifically provides that "[f]or any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances…" Such a notice should define the class, describe clearly the options open to the Class Members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorney's fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the Class Members to calculate individual recoveries, and prominently display the address and telephone number of Class Counsel and the procedure for making inquiries. Manual for Complex Litigation at § 21.312. *See* Fed. R. Civ. P. 23(c)(2)(B)(i-vii).

Here, each Class Member will receive a tailored notice so that all Class Members will be given an opportunity to participate or not to participate, including the right to preserve any individual claims or rights they may have against the Defendant in this action. The proposed Notice, attached as Exhibit B, should be approved. The proposed Notice gives Class Members a reasonable period of 60 calendar days after the mailing date to opt out of the Class or object to the Settlement. The Notice defines the Class, describes the background of the case and summarizes the terms of the Settlement, including the method of allocating individual payments, clearly describes the options open to the Class Members and deadlines for taking action,

describes the terms of the proposed settlement, discloses benefits provided to the class

representative, provides information regarding attorney's fees, indicates the time and place of the

fairness hearing, explains the procedure for distributing settlement funds, informs Class

Members, how to object to the Settlement or request exclusion from the Class if they so choose,

provides Class Member's individual recoveries, and prominently displays the address and

telephone number of Class Counsel and the procedure for making inquiries. The Notice is

written in plain and understandable language. The Parties request approval of the Notice as

drafted. If approved, the Notice will be sent to potential Class Members by "United States mail."

Rule 23(c)(2)(B). In sum, the Notice constitutes the "best notice that is practicable under the

circumstances," and, therefore, should be approved. *See id.*

## V.     CONCLUSION

For the reasons addressed above, the Parties respectfully request that the Court enter the

proposed Preliminary Approval Order, attached as Exhibit C.

Respectfully Submitted,

*/s/ Joseph F. Scott*
Joseph F. Scott (0029780)  (Trial Counsel)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
(216) 912-2221
11925 Pearl Rd., Suite 308
Strongsville, Ohio 44136
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

Seth R. Lesser (admitted *pro hac vice*) (Trial
Counsel)
Christopher M. Timmel (admitted *pro hac vice*)
**KLAFTER LESSER LLP**
2 International Dr., Suite 350
Rye Brook, New York 10573

36

(914) 934-9200
seth@klafterlesser.com
christopher.timmel@klafterlesser.com

Matthew Scott Parmet (admitted *pro hac vice*)
**PARMET PC**
3 Riverway, Suite 1910
Houston, Texas 77056
(713) 999-1187
matt@parmet.law

*Attorneys for Plaintiff and Proposed Fed. R. Civ. P. R. 23 Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s Joseph F. Scott*
Joseph F. Scott (0029780)  (Trial Counsel)

37